JAMES FREELAND, Respondent, v. GEORGE VAN CAMPEN, Appellant.

Parties to protested negotiable paper may, by special agreement, provide for taking up such paper, without altering the status of their legal rights in respect to each other.

HOGEBOOM, J. The rights of the parties depend upon the true construction to be given to transactions between them at their different dates.

On the 27th of February, 1854, the plaintiff purchased of the defendant lumber, the supposed quantity of which entitled the latter to compensation to the amount of $2,660, and for this amount the plaintiff gave to the defendant his negotiable note, indorsed by one Blackmore, payable at the Leather Manufacturers' Bank in New York, on the 31st day of May, 1854. This note was shortly thereafter negotiated by the defendant at the Steuben County Bank, and both parties became liable upon it. Before its maturity, and on the 29th day of May, 1854, the plaintiff and defendant accounted together in regard to the lumber, and by measurement ascertained a deficiency in the quantity which entitled the plaintiff to a deduction of $677.95 from the purchase price; so that the true amount for which he was liable to the defendant on account of the lumber was $1,982.05, instead of $2,660. Some provision therefore was to be made for this; especially as the $2,660 note would mature in a few days. The plaintiff was then in possession of a good and collectible draft drawn by Almy & Wilcox, of Cincinnati, on Duncan, Sherman & Co., of New York, payable without grace on the 1st day of June then next. This was less than his just indebtedness to the defendant by the sum of $384.90. The plaintiff thereupon executed and delivered to the defendant his note for the last named sum, payable on the 1st day of August thereafter, at the Leather Manufacturers' Bank in New York, and also indorsed and delivered to him the draft before mentioned *in full payment* of the note of $2,660. This agreement was reduced to writing at the time. The legal

effect of it was, I think, as between the present parties, to make the defendant and not the plaintiff liable to pay the $2,660 note at the Steuben County Bank. The plaintiff had put into the defendant's hands available paper to pay so much of that note as he was equitably bound to pay. He had in effect negotiated or sold to the defendant such available paper in full payment and extinguishment of such liability. The defendant could doubtless have realized the full amount by negotiating it at the Steuben County Bank. If he had done so and had procured the discount of his own paper for the balance, the $2,660 note would have been paid, and both parties would then have remained liable, as between themselves, for precisely what was equitable between them. This was doubtless what was intended. At all events, for a perfectly valid price and consideration, to wit : the plaintiff's note payable at a future day, and the Cincinnati draft, also not yet matured, the plaintiff paid so much of the $2,660 note as he was, as between the parties, bound to pay, and these were received *in payment.* Such is the language of the written contract, and there is nothing in the case to alter or qualify its effect. The legal effect of the transaction was not, as the defendant's counsel supposes, to make the defendant the mere bailee or agent of the plaintiff to negotiate and collect the draft and small note and apply the proceeds to the extinguishment of the $2,660 note. Even if such was the transaction, the defendant neglected his duty in not promptly transmitting the draft for collection, and if the plaintiff in any way subsequently paid of this amount of $2,660 more than by this agreement it was intended he should pay, it is not perceived why he ought not to be permitted to recover it as money paid for and on account of the defendant. By reason of the defendant's negligence in forwarding the draft for collection it was not seasonably protested, and the plaintiff was discharged from his liability as indorser.

On the 10th of August, 1854, the parties made a further agreement in writing, reciting the foregoing facts, and that the $2,660 note and the $1,597.15 draft were still unpaid, and stipulating that for the present the plaintiff should take care

of so much of said note of $2,660 as equaled the amount of the draft, and that the defendant should take care of the balance; but without in any respect altering existing, or creating new or different liabilities of the parties to each other or to other persons.

After this explicit statement and reservation of their rights, I do not see how, by this arrangement, the position of the parties was in any respect changed. The plaintiff must by this time have paid his $380.90 note, for it had just previously matured, and nothing further is said about it. He was also legally discharged from his liability on the draft because it had not been duly protested. On the same day he performed his part of the agreement of that date by paying $1,620.83 on the $2,660 note, the defendant paying the balance. It being necessary to take measures to collect the draft, the defendant placed it in the plaintiff's hands for that purpose. It was prosecuted against Duncan, Sherman & Co., by the advice of the defendant, and in his name, the defendant giving the plaintiff written authority for that purpose, and authority to receive and control the proceeds when collected. The suit brought against Duncan, Sherman & Co. was ultimately, and on the 26th of February, 1857, compromised, with the advice and consent of the defendant, upon payment of the principal of the draft, without interest or costs. The plaintiff's costs, $60, and $8 for exchange, being deducted by the attorneys from the same. The balance, $1,529.15, was put into the plaintiff's hands on the 26th day of February, 1857. The difference between this sum and the amount paid by him in August 1854, with interest thereon, was the amount which the plaintiff recovered on the trial, with the exception of one or two small items of claim and set-off which were not disputed.

The plaintiff was entitled to recover this amount. The rights of the parties were fixed by the agreement of May 29th, 1854, and not altered by the agreement of August 10th following. The arrangement for taking up the $2,660 note was a temporary one, and the amount then paid by the plaintiff wholly in excess of what was due from him. The

debt was the debt of the defendant, and the plaintiff in effect his surety on the note. The draft was subsequently prosecuted for the benefit of the defendant, and the expenses of collection lawfully deducted from the amount with which the plaintiff was otherwise chargeable. By giving effect to this arrangement, the intentions of the parties will be carried out, justice done, and the legal rights of the parties preserved.

I think the judgment should be affirmed.