In the Matter of the Estate of ELIZABETH LYON CHAPIN, Deceased.

Surrogate's Court, Monroe County, March 28, 1938.

*Merle L. Sheffer* for the motion.

*Castle & Fitch* [*J. Sawyer Fitch* of counsel], for the executor, respondent.

FEELY, S. On the return of an order to show cause on March 17, 1938, the respondent moved to dismiss this proceeding on the ground that the petition did not state a case for discovery and delivery of assets alleged to belong to the estate of this decedent.

The proceeding is one brought to compel discovery of information and also delivery of 200 shares of the common corporate stock of the Eastman Kodak Company, or to impress a trust thereon in favor of the petitioner as temporary administrator. The petition alleges that the 200 shares of this stock, " formerly belonging to " said decedent, which should be delivered to the petitioner, or included in an inventory or appraisal, are in the possession, under the control or within the knowledge or information of the respondent, who withholds the same from the petitioner.

The petition further alleges that the respondent obtained such possession or control in the lifetime of said decedent about November 15, 1931, on an occasion when " said stock was loaned by the decedent to [the respondent] for temporary use as collateral for his own personal loans at one of the Rochester Banks or Trust Companies;" and that the same was so pledged and has never been returned to the decedent or the petitioner, although demand has been made.

The first ground of dismissal, on the papers, urged by the respondent's counsel, is that the petition does not allege that the decedent in her lifetime was the owner of this stock. Reading, as we must, all the allegations of this pleading together, the inference can fairly be drawn from the allegation that the decedent " loaned " the stock to the respondent, and that her legal representative now claims it as an asset of her estate, that she was the owner of it at the time of the loan. The fact being that she thereafter died and that this proceeding has been begun by her legal representative to recover it as an asset, no inconsistency exists between the allegation that this stock " formerly belonged " to said decedent, and the implication of ownership carried by the allegation that she loaned it to the respondent. At least, the acceptance of a loan, lease or bailment necessarily implies an acknowledgment of the relatively superior rights of the lender or lessor in the property. On this basis, when the same rule is applied to land, the tenant is estopped to question the title of his lessor or landlord. It is also to be presumed that such superior right continued and that the lender owned the reversion at the time of her death, regardless of whether the

reversion was merely possessory in character, as in the case of a sublease, or a right of outright ownership as well.

The second ground of dismissal urged by the respondent on the face of the papers is that the transaction was a debt rather than a loan of specific property, and for that reason there is not available to the administrator the remedy, broadly called a " discovery " proceeding, under sections 205 and 206 of the Surrogate's Court Act, under which this proceeding expressly purports to have been brought.

At the outset, the elimination of certain elementary points that were mentioned in the oral arguments may also serve by setting the background for the particular point in issue. Originally this sort of proceeding was merely " inquisitorial," and in a proper case required a surrender of assets where the respondent was found to have a mere naked possession thereof, but in time the statutes were broadened beyond a mere search for information so as to enable the court to try title, and today, if an issue of title is raised by a demand for delivery of property, the proceeding is equivalently one to recover a chattel. In so far as the proceeding is one *in rem*, it is limited to the recovery of specific property or the proceeds of a sale thereof, and for this reason cannot be used to collect a debt or to recover a sum of money generally, as distinct from certain earmarked specie or currency. In so far as the proceeding is directed to a discovery of information, it cannot be used as a substitute for an examination before trial or solely for the purpose of using the information in another court. Whether a search for information only should be confined to specific property may well be doubted. If the respondent were to be given the benefit of this doubt, where otherwise his motion would fail, at least as to the " inquisitorial " aspect that this remedy retains even today, there remains for consideration the respondent's claim that the transaction alleged is a debt and not a loan of specific property for temporary use as collateral security to respondent's own borrowing. In this respect, also, the pleader is again entitled to have his pleading as a whole liberally construed and to have all reasonably possible implications read, for the purposes of this motion, most favorably to him.

An allegation that there was a loan of stock can be read in different ways. For example, it is conceivable that when a person living on income, whose presently unneeded capital, as it comes in, is rapidly put into the form of interest-bearing securities, and whose money or cash is mostly income in relative small amount, deposited in a checking account for immediate use, is asked for a loan of a large sum of money, especially in an emergency such as might be imagined to have occurred in 1931, such a capitalist might find it con-

venient to make the loan by handing over, out of a safe in his home, a recently bought block of stock of readily convertible value, as the equivalent of the money. In that case the borrower would be saved the disclosure that he had been forced to get an accommodation indorsement, and would appear also as the owner of the stock in the eyes of those to whom it meant to put it up as collateral. Such a loan of stock would be really a loan of money, and the transaction would be a mere debt, for the recovery of which this peculiar proceeding would not lie.

The reported cases illustrate how in a dealing of this sort the papers accompanying such a transfer of stock generally show that the stock passed as money rather than as stock. Thus, where the recipient of stock signed a receipt reciting it was " in full payment " of the giver's obligation to him, the transaction would not be considered as one entailing any obligation to return the stock itself (*Freeland* v. *Van Campen*, 1 Keyes, 39), which is the essential feature of a lease of personal property or a bailment.

So, where the recipient of a note gave a receipt for the note, " which I agree to account for on demand," the promise to " account for " could well be held to indicate the intention was that the borrower, after raising what money he could by negotiating the note, would pay the first lender the equivalent in money, and that the first lender could not ask for the return of the note itself. (*Eaton* v. *Alger*, 2 Keyes, 41.)

On the other hand, where the parties intended the return of the stock itself rather than the money equivalent of its value, one can expect to find such evidence thereof as was the paper signed by the recipient in the case of *Barclay* v. *Culver* (30 Hun, 1), to wit: " Received from E. K. A. 100 shares of J. C. & A. R. R. Co., as a loan, to be returned to him on or before April 2, 1875, or to be paid for at my option 25 % in par value, or say $2500 for said 100 shares of stock." (Abbreviations by the writer.) On the back of the certificates was a power of attorney, signed by the plaintiff lender, authorizing transfer of the stock on the books of the company. In such a case the plaintiff is entitled to have the stock returned to him, rather than money, but not necessarily the identical stock certificate that he loaned. One reason assigned for this is the market custom of regarding any one unit or like block of the same stock just as good as any other. (*Barclay* v. *Culver*, *supra*.)

It has also been said by another court that any such unit or certificate could not be the object of personal attachment or have any peculiar value in the lender's estimation as contradistinguished from any other shares in the same company. (*Atkins* v. *Gamble*, 42 Cal. 86.) However, this peculiarity of corporate stock or

bonds, etc., does not take off one whit from the lender's right to recover stock as distinct from money. Another court has held that it did not matter that in the meantime the company had ceased to exist and all its franchises had been transferred to another company, so that its stock was of no value. (*Fosdick* v. *Greene*, 27 Ohio St. 484.) There Greene transferred his railroad stock to a person who gave back a writing reading: "Borrowed of W. Greene 109 shares of M. & C. R. R. stock, drawing interest at 8 %, to be returned on demand." (Abbreviations by the writer.)

In *Steward* v. *Sears* (89 Ill. App. 454) the writing read thus: "Received of J. F. H. $15,000 in 4 % U. S. bonds, to be returned to him, and accrued interest, one year from date." (Abbreviations by the writer.)

There the evidence on the trial tended to show the real transaction was not the delivery of the bonds, but the loan of $15,000 in money, for which interest was to be paid. The court said, in the absence of (incompetent) extrinsic evidence, "we must construe the instrument upon which the claim is based as a gratuitous bailment of the bonds of the United States, of the face value of $15,000, bearing interest at the rate of four per centum per annum, to be returned to S. by H. [defendant's testator] on Jan. 1, 1881, with accrued interest."

"When the identical thing delivered is to be restored, the contract is one of bailment, and title to the property is not changed." (Abbreviations by the writer.)

Our New York court said, in *Barclay* v. *Culver* (*supra*):

"The loan made was not of the instrument called a certificate, certifying ownership of 100 shares of the capital stock of the railroad company, but of 100 shares of the stock, represented by the certificate. * * *

"The loan was one for use, and was undoubtedly so designed, * * * and the mode of use was provided for by the power of attorney, to wit, by transfer upon the books of the company, and such transfer of necessity put the stock in condition where its identity might be lost, if its use was to be of any value to the borrower. * * * The court is at liberty to take notice of the usage of business in such matters, and to know that upon such loans the intention of the parties is fully answered by the restoration of 100 shares of the stock of the corporation, no change having occurred by reason of which it does not represent the same proportion and value of the capital of the company."

In *Fosdick* v. *Greene* (*supra*) the stock was valueless at the date of the demand for its return. Suppose, however, the stock had gone up in value and exceeded the pledgor's debt to a third person,

what right would the borrower have to the increment as against the original lender of the stock?

The stock in question here is Kodak common, a stock that a Rochesterian might well wish to retain or recover, in kind, rather than its capital equivalent in money. The allegation is that this stock had been loaned for use as collateral by the borrower. Although this allegation is not as express as those above quoted that require the stock " to be returned," the implications here are to the same effect, because the pleader specifies not only that the stock was loaned, but also that it was lent " for temporary use " as collateral. It is difficult to imagine what other use could have been made of loaned stock, except to put it up as security. This implies that when the debt to the third person, thus secured, shall have been paid, that the borrower would have no further use for the stock, and would return it. This is made express here by the allegation that the desired use was a temporary one. The loan was for use, not for ownership; for a time, and not forever; and for collateral, not outright. These limitations, together with the word " loaned," furnish the basis from which an inference, just as reasonable, to say the least, as the one of convenience, can be drawn, to wit, that the transaction was a lease of this specific property for a temporary purpose — in other words, a bailment thereof — implying a return in kind or sort to the lender, who, as a resident of this county, might well be understood to have preferred Kodak stock to its capital value in money at the date of the loan. These details negative the inference that the lender had merely found it convenient to let the borrower have this stock for money, with no other security than that afforded by execution on a judgment *in personam* (See *Matter of Lusher*, 159 Misc. 387, 388, 389) for a sum that was not specified in the original transaction, as pleaded. This petition sets out considerably more than a mere general claim against the respondent for money had and received. The pleader, under the rule, is entitled to have the reading of his plea preferred, that is, the one more favorable to him, both in respect of delivery and in regard to discovery.

The motion, therefore, in both respects, should be dismissed, on the merits, with motion costs payable to the estate by the respondent. The order will provide that the proceeding be placed on the adjourned calendar of March 31, 1938.

Enter an order in accord with this decision.