SMETAL CORPORATION v. FAMILY LOAN CO., *et al.*

161 So. 438.
Division B.
Opinion Filed March 26, 1935.
Rehearing Denied June 3, 1935.

498

*Shutts & Bowen* and *Charles A. Carroll,* for Appellant; *M. S. Solomon* and *A. M. Reder,* for Appellees.

BUFORD, J.—Smetal Corporation was a corporation organized and existing under the laws of the State of Florida and Family Loan Company was a corporation organized and existing under the laws of the State of Florida, each saving its office and principal place of business in Dade County, Florida.

On April 16, 1934, Smetal Corporation exhibited its bill of complaint in the Circuit Court of Dade County against Family Loan Company. Smetal Corporation will hereinafter be referred to as complainant and Family Loan Company as defendant.

The bill of complaint alleged the facts above set forth and further that defendant corporation was then a licensee under the provisions of Chapter 10177, Laws of Florida, 1925. It alleged that at all times prior to January 19, 1934, and since the organization of the two corporations, W. C. Chadwick, Fred S. Meyer and A. M. Reder were officers and directors of both corporations; that on July 29th, 1931, defendant made a loan to complainant of $865.70 and charged interest thereon at the rate of 12% per annum; that on October 16th, 1931, complainant paid to defendant $22.80 as interest on the loan and paid and· discharged the principal of the loan; that on October 16th, 1931, the defendant made a loan to complainant in the sum of $2120.24 upon which the defendant charged and received, and the plaintiff paid, interest at the rate of 12% per annum. That

for the purpose of securing the payment of the last named money the complainant on October 16th, 1931, through its directors at a formal meeting purported to authorize the officers of the plaintiff corporation to mortgage two certain parcels of real estate owned by the plaintiff and described in the bill of complaint, and also purported to authorize the pledging and delivering to the defendant of certain mortgage bonds in the principal amount of $6,000.00 then owned by plaintiff and secured by mortgages or deeds of trust on certain premises sometimes described as "The Two Coral Construction Houses" and certain other bonds described in the bill of complaint. Copies of the minutes of this meeting of the Board were attached to the bill of complaint.

It is further alleged that directors of plaintiff corporation purported to authorize the making of a contract with Chadwick by which he should manage the numerous properties owned by complainant so long as the loan should remain unpaid. That pursuant thereto a certain contract was entered into between the corporation by its officers and directors and the defendant, Chadwick, substantially in accordance with the corporate authorization. Copy of that contract is attached to the bill of complaint. That Chadwick took charge of the properties and at all times since continued to manage and operate the same. That at the time of filing bill of complaint he had in his hands a sum of money belonging to the complainant in excess of the amount of $300.00, the exact amount being to complainant unknown. That the mortgage was made, executed and delivered in accordance with the action of the Board of Directors above referred to but that the mortgage was a deed absolute in form dated October 11th, 1931, and recorded in the public records of Dade County. Photostatic copies are attached to and made a part of the bill of complaint. That on December 31, 1931,

plaintiff paid to defendant $54.00 as interest on the loan at the rate of 12% per annum up to that date and on February 28, 1932, plaintiff paid defendant the sum of $42.40, constituting interest on the loan at rate of 12% from December 31, 1931. That on February 28, 1932, defendant made a loan to the plaintiff in the sum of $2581.32 and out of the proceeds of the loan discharged the prior loan of $2120.24. That although the loan of October 16, 1931, has been paid, defendant has failed and refused to redeliver to plaintiff the pledged bonds and has failed and refused to satisfy the mortgages as required by law.

It is alleged that the transaction of October 16, 1931, was in violation of Chapter 10177, Acts of 1925, in the following respects:

The amount of the loan was in excess of the amount which the licensee was permitted to lend to the complainant.

Defendant corporation thereby permitted the plaintiff to owe to defendant corporation at one time the sum of more than $300.00 for principal.

That the defendant therein and thereby charged and received and was paid interest on said loan at a rate in excess of that permitted by the Act referred to. And, as it is alleged, upon other grounds appearing from the provisions of the Act.

That except as is alleged in the bill of complaint that there has been no other authorization by the Board of Directors except that shown by exhibit 1 above referred to authorizing the officers of the complainant to pledge said bonds or mortgage the premises to secure the payment of any of the loans mentioned in the bill other than that loan of October 16, 1931.

It is then alleged that at various times thereafter until September 1, 1935, certain amounts were paid by the com-

plainant to the defendant as interest and certain amounts were paid on the principal and that on September 1, 1933, the defendant corporation made a loan to the complainant in the sum of $2051.48 and out of the proceeds of this loan complainant paid the balance of the loan of December 22, 1932, on which last named date, December 22, 1932, a loan of $2551.46 has been made, and from the proceeds the balance of previous loan has been discharged. That the loan of September 1, 1933, was evidenced by a promissory note of which complainant corporation through its vice-president, W. C. Chadwick, was the maker and which note was payable on demand of the order of the defendant corporation. That the rate of interest charged and contracted for by defendant on such loan and expressly provided for in said note was 2% per month amounting to 24% per annum. Said note on its face referred to certain "collateral" and there is attached to the bill and made a part thereof.

It is then alleged that the defendant continues to hold the bonds and to hold title to the lands referred to in the bill of complaint which had been conveyed to it as security, although, as is alleged in the bill, the said loan of $2551.48 is void and not enforceable or collectible by the laws of Florida and is a loan made in violation of the laws of Florida.

Again, the bill alleges that the defendant in connection with making the loans above referred to did not comply with the provisions of Chapter 10177 *supra*. The bill then alleges that all loans above referred to were void and unenforceable.

Section 18 of the bill alleges as follows:

"At the time of the making of such loans, the officers and directors of the plaintiff corporation (who, as aforesaid were likewise officers and directors of the defendant cor-

poration) were the owners or representatives of certain business interests known and sometimes referred to as 'the Meyer-Kiser Interests.' During such times the stock of the plaintiff corporation was held by the Meyer-Kiser interests. Thereafter, as a receiver appointed in the State of Indiana, and as such in the capacity of a representative of the creditors of the defunct Meyer-Kiser Bank of Indianapolis, an Indiana State banking corporation, one Thomas E. Garvin became and is the holder of the stock of the plaintiff corporation which is now entirely divested and apart from said Meyer-Kiser interests. Thereafter at the request of said receiver, Thomas E. Garvin, all the officers and directors of said corporation who took part in the negotiating of said loans from the defendant corporation resigned as such officers and directors of said corporation on January 19, 1934, and have been succeeded by the said Thomas E. Garvin as president and director thereof and by other officers and directors not connected with or representing the said Meyer-Kiser interests. That the interest of said former officers and directors of the plaintiff corporation, by reason of their being officers and directors of the defendant corporation which made the loans in question, including the last described loan of September 1, 1933, is adverse and antagonistic to the persons now interested in the plaintiff corporation."

Section 20 of the bill alleges as follows:

"That said promissory note purporting to evidence the loan of September 1, 1933, is negotiable in form. The said mortgage bonds which the defendant corporation holds under the claim that the same are security for the payment of said loan of September 1, 1933, likewise are negotiable in form and have not yet matured. The premises to which the defendant corporation holds title under a claim that the

same are security for said loan are held by deeds which appear on their face to be absolute. It is essential to the protection of the rights of the plaintiff in the premises that this Court, during the pendency of this cause, restrain the defendant corporation from transferring said promissory note and said mortgage bonds, and from transferring or conveying the said parcels of real estate held by it under said deeds, and that the defendant, W. C. Chadwick, be restrained from making further collections of income or profits from said premises or disposing of funds from such sources as are now held by him as hereinabove alleged. That unless this Court shall grant an injunction in the form and manner hereinbelow prayed, the plaintiff will suffer irreparable loss and irreparable injury, and that by reason of the facts and matters alleged in this bill, the injury which it is apprehended will result from the negotiation of said note and bonds and the transfer of said premises and the disposition of such monies will be done unless the temporary injunction hereinbelow prayed for be granted by this Court, without notice."

The bill prays that the Court take jurisdiction of the subject matter and of the parties and that by its final decree it find and decree that the loan of September 1, 1933, was and is void and that the promissory note purporting to evidence the said loan is void and unenforceable, and to require the defendant corporation to surrender up the note for cancellation and to require defendant to render and return to the plaintiff the mortgage bonds described in the bill of complaint and that the Court find and decree that the deeds of conveyance which purported to operate as mortgage for the security of the loan were void, and to require defendant to surrender up said deed for cancellation, and to require defendant Chadwick to pay to the plaintiff, or into the reg-

istry of the court any moneys held by him collected from the management and operation of the premises of the complainant, including the premises described in the two deeds mentioned.

The prayer is also to require defendant to pay to plaintiff the sum of $2222.82, being double the amount of interest at the rate in excess of 10% per annum which complainant alleged it had paid to defendant, but in the brief appellants abandoned the claim for this refund.

The bill then prays for the temporary injunction, without notice, enjoining and restraining the defendant corporation from negotiating or transferring the above described promissory note or mortgage bonds, and from transferring or conveying the premises conveyed to it by the above described deeds, and enjoining and restraining said defendant, W. C. Chadwick, from receiving or collecting any rents, profits, issues or incomes from any of the premises or properties belonging to the plaintiff corporation, including the premises described and covered by the aforesaid deeds, and from paying any such income monies now in his hands to the defendant corporation, or from otherwise disposing thereof during the pendency of this suit."

It then prays that on final hearing the court made injunction permanent and make such other orders as may appear meet and proper.

Temporary restraining orders were granted as prayed. Then motions were filed to dismiss the bill and to dissolve the restraining orders; also certain motions to strike certain portions of the bill of complaint were filed.

An order was made on those motions on July 5, 1934, and amended order was made on August 1, 1934, and recorded August 2, 1934, in Chancery Order Book 327, page

340, in the office of the Clerk of the Circuit Court of Dade County, Florida.

The pertinent part of that order is as follows:

"It Is Thereupon Considered, Ordered, Adjudged and Decreed that the motion to dismiss, motion to strike and motion to dissolve filed by the defendant Family Loan Company and the motion to dismiss filed by the defendant W. C. Chadwick be and the same are hereby overruled and denied, and the defendants allowed up to and including the 10th day of August, A. D. 1934, in which to file their respective answers.

"It is Further, Considered, Ordered, Adjudged and Decreed that the action of W. C. Chadwick to dissolve the injunctive order is hereby granted as to that portion of the Order reading as follows:

" 'It is further ordered that the defendant W. C. Chadwick and his agents, employees and attorneys, and each of them are hereby enjoined and restrained, until the hearing or the further order of this Court, from taking, receiving or collecting any monies, incomes, issues or profits from any of the properties of the plaintiff corporation, including the premises described in the above mentioned deeds.'

"It Is Further Considered, Ordered, Adjudged and Decreed that the motion of W. C. Chadwick, to dissolve the injunctive order insofar as it pertains to that portion of the order reading as follows: '—and from paying over to the defendant or otherwise disposing of any such monies which are in the hands which were received or collected by him from such sources,' be and the same is hereby denied and the said W. C. Chadwick is hereby required and directed to keep intact all monies received by him out of the operation and management of the properties of said Smetal Corporation, until further order of this Court."

From this Order complainant appealed. It assigns as error the action of the Court in dissolving that portion of its injunctive order of April 16, 1934, reading as follows:

"It is further ordered that the defendant, W. C. Chadwick, and his agents, employees and attorneys, and each of them are hereby enjoined and restrained, until the hearing or the further order of this Court, from taking, receiving or collecting any monies, incomes, issues or profits from any of the properties of the plaintiff corporation, including the premises described in the above mentioned deeds."

The second assignment of error challenges the same paragraph of the order.

Cross assignments of error were filed, the first of which challenged the action of the Court denying the defendant Family Loan Company's motion to dismiss the bill of complaint.

The second cross assignment of error challenges the same provision of the order on the ground that Section 6586, A. C. L. 1927, prohibits a corporation from pleading usury when a corporation occupies the position of borrower.

The third cross assignment of error challenges the same provision of the order on the ground that the small loan Act, Chapter 10177, *supra,* is not a part of the general usury law of the State and that Section 6586 C. G. L., which prohibits a corporation from pleading usury operates to repeal *pro tanto* of the small loan Act, same being Chapter 10177, Laws of Fla., 1925, when the corporation occupies the position of a borrower.

The fourth cross assignment of error challenges the same provision of the order.

The fifth cross assignment of error challenges the same provision of the order for other reasons, as does also the sixth cross assignment of error.

The seventh cross assignment of error challenges the order of the court in denying motion to dissolve the injunction and the eighth cross assignment of error challenges the order of the court in denying motion to strike certain parts of the bill of complaint.

We will dispose of the cross assignments of error first. Chapter 10177, Acts of 1925, has been held valid by this Court in the case of Beasley v. Cahoon, 109 Fla. 106, 147 Sou. 288.

The bill alleges that the defendant corporation was a licensee under that legislative Act.

Section 1 of the Act is as follows:

"That no person, co-partnership or corporation shall engage in the business of making loans of money, credit, goods or things in action in the amount, or to the value of Three Hundred ($300.00) Dollars or less, and charge, contract for, or receive a greater rate of interest than ten per centum per annum therefor, except as authorized by this Act, and without first obtaining a license from the Comptroller of the State of Florida, hereinafter called the licensing official."

Section 13 of the Act provides as follows:

"Every person, co-partnership and corporation licensed hereunder may loan any sum of money not exceeding in amount the sum of Three Hundred ($300.00) Dollars and may charge, contract for and receive thereon interest at a rate not to exceed three and one-half (3½) per centum per month. Interest shall not be payable in advance or compounded and shall be computed on unpaid balances. In addition to the interest herein provided for, no further or other charges or amount whatsoever for any examination, service, brokerage, commission or other thing or otherwise shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and neces-

sarily paid out by the licensee to any public officer for filing or recording or releasing in any public office, any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. If interest or charges in excess of those permitted by this Act shall be charged, contracted for or received, the contract or loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.

"(a) No licensee shall directly or indirectly charge, contract for or receive any interest or consideration greater than ten per centum (10%) per annum upon the loan, use or forbearance of money, goods, or things in action, or upon the loan, use or sale of credit, of the amount or value of more than Three Hundred ($300.00) Dollars. The foregoing prohibition shall also apply to any licensee who permits any person, as borrower, or as endorser, guarantor or surety for any borrower, or otherwise to owe directly or contingently or both to the licensee at any time the sum of more than Three Hundred ($300.00) Dollars for principal." As we construe these provisions, this is an Act applying especially to licensees such as the defendant is alleged to be.

One of the provisions is that, "if interest or charges in excess of those permitted by this Act shall be charged, contracted for, or received, the contract shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

Sub-section (A) limits the rate of interest per annum that may be charged by such licensee on loans exceeding Three Hundred ($300.00) Dollars to not more than ten per cent. (10%) per annum, and if this limitation is violated the licensee thereby comes within the purview of the provision last above named and he has no right to collect or receive any principal, interest or charges.

We think that transactions between persons becoming licensees under the provisions of this Act and their clients or customers who borrow money from such licensees are controlled by the provisions of this Act and that the general law denouncing usury is not applicable to these transactions.

Chapter 10177, *supra*, was enacted to meet a condition which prevailed in the State and constituted a declaration of a public policy and was in the exercise of the police power of the State,· all of which is shown by the preamble to the Act. In the exercise of the police power the State by the provisions of this Act assumes to regulate the business of making small loans and to allow such loans to be made at a rate of interest larger than that theretofore recognized as lawful. Realizing the evil that could be accomplished by persons, firms or corporations engaged in this business, the Legislature placed regulatory provisions in the statute. The statute is so framed as to bring all of the money lending transactions of a licensee within the purview of the statute. A licensee under this statute can not claim the right to lend money in sums of Three Hundred ($300.00) Dollars and less under the regulatory provisions of the statute and at the same time to lend larger sums of money without being controlled by the statute. When one wishing to lend money under the provisions of this Act makes application for and procures license to transact a loan business under the provisions of the Act, he takes the liabilities of the Act along with its assets and acquires the protection of the Act with the limitations which it places upon him.

Acts of like character are in effect in most States. Contracts made by licensees under such Acts have been held void because of violation of the Act in many cases. See Angleton v. Franklin Finance Co., 88 Colo. 322, 295 Pac.

797; Westville, etc., Loan Co. v. Pasqual, 109 Conn. 110, 145 Atl. 758; Loan Corporation v. Gallagher, 115 Conn. 102, 160 Atl. 426; Seaboard Security Co. v. Campbell, 42 Ga. App. 299; 155 S. E. 779; Lanier v. Consolidated Loan & Finance Co., 47 Ga. App. 148, 170 S. E. 99; Hartsfield Co. v. Robertson, 48 Ga. App. 735, 173 S. E. 201; Raming v. Peyser, 259 Ill. App. 152; Wells v. Indianapolis Co., 88 Ind. App. 231, 161 N. E. 687; Cotton v. Commonwealth Loan Co., (Ind. App.) 184 N. E. 578; Geyer v. Spencer, (Ind. App.) 189 N. E. 429, Automobile Securities Corporation v. Nemo (La. App.) 144 Sou. 269; Unity Plan Finance Co. v. Green, (La. App.) 151 So. 85; Cuneo v. Bornstein, 269 Mass. 232, 163 N. E. 810; Platz v. Lapinski, 263 Mich. 240, 248 N. W. 607; Fidelity Finance Co. v. Westfall, 127 Neb. 56, 254 N. W. 710; Burque v. Brodeur, 85 N. H. 310, 158 Atl. 127; Morris Plan Corporation of New Jersey v. Schwartz, 8 N. J. Misc. 417, 150 Atl. 390; London Realty Co. v. Riordan, 148 App. Div. (N. Y.) 854, 100 N. E. 600, aff'g. 133 N. Y. S. 595; Grannis v. Stevens, 216 N. Y. 583, 111 N. E. 263; State v. Powers, 125 Ohio St. 108, 180 N. E. 647; Bourman v. Home State Bank, 111 Okla. 285, 239 Pac. 579; Scheid v. Family Loan Company, 163 Tenn. 611, 45 S. W. (2nd) 54; Pugh v. Hermitage Loan Co., 167 Tenn. 389, 70 S. W. (2nd) 22; Joy v. Provident Loan Society (Texas Civ. App.), 37 S. W. (2nd) 254; Mason v. City Finance Co., 113 Fla. 73, 151 Sou. 521.

In Cuneo v. Bornstein, *et al., supra,* the Supreme Court of Massachusetts held:

"The purpose of the Small Loan Act (G. L. c. 140, Nos. 96-114) was to prohibit the unlicensed business of making small loans and to prevent an excessive rate of interest on such loans. The statute was passed as a protection to the borrower; it was intended to make the statute effective and

to prevent its evasion by endorsing notes given for such loans to third parties. It would afford little protection to a borrower if the notes given contrary to the statute would be valid in the hands of a holder in due course. In our opinion the word 'void' was used in its technical sense; the notes were void at their inception and of no validity in the hands of Glickman. This construction of the statute is supported by Thomas v. Burnce, 223 Mass. 311, at page 312, 111 N. E. 871, where it was said, 'it is true the plaintiff has a complete defense at law to the notes expressly declared to be void * * * but his remedy is not limited to the common law, since the enactment of St. 1911, c. 727, Nos. 10, 13, amended by St. 1912, c. 675, Nos. 3, 4, has conferred expressly also a right to maintain a suit in equity.' Missouri, Kansas & Texas Trust Co., v. Krumseig, 172 U. S. 351, 19 S. Ct. 179, 43 L. Ed. 474. These statutes declaring the usurious note to be void have not been repealed or rendered ineffective by any of the provisions of the negotiable instruments Act. Sabine v. Paine, 223 N. Y. 401, 119 N. E. 849, 5 A. L. R. 1444; Eskridge v. Thomas, 79 W. Va. 322, 91 S. E. 7 L. R A. 1918c, 769."

In the case of Missouri, Kansas & Texas Trust Co. v. Krumseig, *et al.,* 172 U. S. 351, 43 L. Ed. 474, the Supreme Court of the United States said:

"Under statutes providing that in cases of usury, the borrower is entitled to relief without being required to pay any part of the usurious debt or interest, as a condition thereof, it has been held by the courts of New York and of Arkansas that courts of equity are constrained by the statutes, and must grant the relief provided for therein without applying the general rule that a bill or other proceeding in equity, to set aside or affect a usurious contract, cannot be maintained wtihout paying or offering to pay the amount

actually owed. Williams v. Fitzhugh, 37 N. Y. 444; Lowe v. Loomis, 53 Ark. 454.

"But it is strenuously argued, and of that opinion was Circuit Judge Sanborn in the present case, that Federal Courts, in the exercise of their equity jurisdiction, do not receive any modification from the legislation of the states or the practice of their courts having similar powers, and that consequently no act of the Legislature of Minnesota could deprive the Federal courts sitting in equity of the power or relieve them of the duty to enforce and apply the established principle of equity jurisprudence to this case, that he who seeks equity must do equity, and to require the appellees to pay to the appellant what they justly owe for principal and lawful interest as a condition of granting the relief they ask.

"We think it a satisfactory reply to such a proposition that the complainants in the present case were not seeking equity, but to avail themselves of a substantive right under the statutory law of the state. It seems to be conceded, or, if not conceded, it is plainly evident that if the cause has remained in the state court where it was originally brought, the complainant would have been entitled, under the public policy of the State of Minnesota, manifested by its statutes as construed by its courts, to have this usurious contract canceled and surrendered without tendering payment of the whole or any part of the original indebtedness. The defendant company could not by removing the case to the Federal Court, on the ground that it was a citizen of another state, deprive the complainants of such a substantive right. With the policy of the state legislation the Federal courts have nothing to do. If the States, whether New York, Arkansas, Minnesota, or others, think that the evils of usury are best prevented by making usurious contracts void, and

by giving a right to the borrowers to have such contracts unconditionally nullified and canceled by the courts, such a view of public policy, in respect to contracts made within the state and sought to be enforced therein is obligatory on the Federal Courts, whether acting in equity or at law. The local law, consisting of the applicable statutes as construed by the Supreme Court of the State, furnishes the rule of decision.

"In Clark, *et al.*, v. Smith, 13 Pet. 195 (10: 123) it was said that 'when the Legislature declares certain instruments illegal and void, *there is inherent in the courts of equity a jurisdiction to order them to be delivered up and thereby give effect to the policy of the Legislature; that the state* Legislatures have, certainly, no authority to prescribe the forms or modes of proceeding in the Courts of the United States; but having created a right, and at the same time prescribed a remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the Federal Courts, no reason exists why it should not be pursued in the same form as in the State courts; and that the undoubted truth is that when investigating and decreeing on titles in this country the court must deal with them in practice as it finds them and accommodate the modes of proceeding to the nature of the case, and to the character of the equities involved in the controversy, so as to give effect to state legislation and state policy; not departing, however, from what legitimately belongs to the practice of a court of chancery." (Italics supplied.)

Chapter 10177 is a special act to regulate a certain class of loans made by licensees who voluntarily bring themselves within the protection of and assume the limitations provided by that legislative Act, and these transactions are not con-

trolled by the general law in regard to usury, nor do we think that Section 60 of Chapter 10096, Acts of 1925, being Section 6586 C. G. L., bars a borrower corporation from a licensee from the right to go into a court of chancery and seek the cancellation of a void contract.

Having arrived at this construction of the statute it is unnecessary for us to discuss further the cross assignments of error except to say that they are not well founded.

The motion to dismiss takes the place of a demurrer, and admits for the purposes of the consideration of the motion that all facts well pleaded in the bill of complaint are true. This admission, however, does not preclude the defendant from answering the bill of complaint when his motion to dismiss is denied and in his answer deny every material allegation of the bill of complaint. For this reason, the rights of the parties are not finally adjudicated by denial of the motion to dismiss.

The allegations of the bill of complaint are quite sufficient, if true, to show that the defendant was a licensee under the provisions of Chapter 10177, *supra*, and that the terms of that Act have been violated by the defendant in connection with the loans referred to in such manner as to make those transactions void.

We now come to the question presented by the assignments of errors filed by the appellant.

The only question here is whether or not the court abused judicial discretion in vacating a temporary injunction wherein and whereby Chadwick had been enjoined from retaining and controlling certain property under a written contract with the complainant until the further order of the court. It will be noted that the order appealed from, although vacating the injunctive order, insofar as the possession and control of the property was concerned, contin-

ued the injunction to the extent that it denied to Chadwick the right to dispose of any of the property or any of the rents, issues and profits arising from the same until the further order of the court. It appears to us that this was a matter in which the Chancellor had a broad degree of discretion. The complainant contends that the contract is void and that, therefore, Chadwick had no right to hold possession of the property. This contention may be found to be true on final hearing, but in the meantime Chadwick is holding the property under a contract which on its face appears to be valid and binding. Therefore, we cannot say that it clearly appears that the court abused judicial discretion in vacating an injunctive order in such manner as merely to allow Chadwick to stay and remain in possession of the property but required him to hold all funds received subject to the further order of the court.

Therefore, the order appealed from should be affirmed. It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.