Myers, J.
 

 The principal question in this cause is whether the promissory note and chattel mortgage, executed and delivered by defendants to plaintiff, are void by reason of Sections 6346-5 and 6346-5a, General Code.
 

 Section 6346-5 reads in part as follows: “No such licensee or licensees shall make a loan or purchase or furnish guaranty, or security, as hereinbefore provided at a greater total charge, including interest, than three per cent per month; except that on loans that do not exceed fifty dollars in amount, in whatever manner made payable, an inspection fee of not to exceed one dollar may be collected at the time the loan
 
 *335
 
 is made, when such loan is made for a period of not less than four months; and such inspection fee shall not be imposed upon the same borrower for any new or additional loan made within four months after such charge has been imposed. Said three per cent per month shall not be paid in advance and shall be computed on unpaid monthly balances, without compounding interest or charges. No bonus, fees, expenses, or demands of any nature .whatsoever, other than said inspection fee and said total charge of three per cent per month (which shall include interest) as herein-before provided, shall be made, paid, or received, directly or indirectly, for such loans, purchases or furnishing guaranty or security, wage assignments or advancements except court costs upon the actual foreclosure of the security or upon the entry of judgment.”
 

 Section
 
 6346-5a
 
 reads as follows: “Provided, however, that upon the amount in excess of three hundred dollars ($300) for principal owing to the licensee for any such loan, purchases or furnishing guaranty or security, no licensee shall directly or indirectly charge, contract for- or receive any interest or consideration greater than at the rate of eight per cent per annum, which shall include all charges, shall not be paid in advance and shall be computed on unpaid monthly balances, without compounding interest or charges. The foregoing eight per cent per annum limitation of rate herein made shall also apply to any licensee who permits any person, as borrower, or as endorser, guarantor, surety for, or as spouse of any borrower, to owe directly or contingently, or both, to the licensee at any time the stim of more than three hundred dollars ($300) for principal.
 

 “If interest, consideration or charges in excess of those permitted by this act shall be charged, contracted for or received, the contract cmd all the papers in connection therewith shall be void and the licensee shall
 
 
 *336
 

 have no right to collect or receive any principal, interest or charges whatsoever.”
 
 (Italics ours.)
 

 The immediate question is' whether the provisions of the chattel mortgage permitted charges not authorized by the statutes to be collected from defendants. A part of the chattel mortgage reads as follows: “Said mortgagors further covenant and agree that” under certain circumstances “the whole sum, principal and interest, shall become due, and the said mortgagee may without demand, which is hereby waived, enter into any building or upon any premises where said property, or any part thereof, may be situated, and take the same into its possession without process of law, and dispose of the same at any time thereafter, at public or private sale, as in its judgment may seem best, mortgagor waiving all demand for payment of the amount due on the within agreerhent, and any and all notice of the time and place of said sale, and out of the proceeds of said sale to pay first, the reasonable cost and expense of taking, keeping and selling the same and all court costs * * *.”
 

 It will be observed that the chattel mortgage authorized the mortgagee, under certain circumstances, to enter into any building, seize the property without process' of law, sell it at public or private sale, and out of the proceeds pay first the cost of taking, keeping and selling the same. This was making a sheriff out of the mortgagee. Costs incurred in a foreclosure action are within the law and authorized by law. Such costs follow a judgment in court and do not violate the terms of the two statutes mentioned. Upon foreclosure proceedings’ in court on the note and chattel mortgage, the debtors know that the court costs will be fixed by law. If, however, under this chattel mortgage, the property is seized and stored by the mortgagee, the debtors have no means of knowing what the “seizing” and “storage” charges will be; nor could any one else know by examination of the note and
 
 *337
 
 mortgage. They are costs and charges made by the mortgagee. Such charges are beyond the provisions of the statute here under consideration. They are charges beyond the inspection fee and the total charge of three per cent per month allowed to licensed dealers under the law.
 
 London Realty Co.
 
 v.
 
 Riordan,
 
 207 N. Y., 264., 100 N. E., 800;
 
 Colonial Plan Co.
 
 v.
 
 Tartaglione,
 
 50 R. I., 342, 147 A., 880;
 
 Smetal Corp.
 
 v.
 
 Family Loan Co.,
 
 119 Fla., 497, 161 So., 438;
 
 Cash Service Co.
 
 v.
 
 Ward,
 
 118 W. Va., 703, 192 S. E., 344;
 
 Ideal Financing Assn.
 
 v.
 
 La Ponte,
 
 120 Conn., 190, 180 A., 300.
 

 The validity of the note and mortgage may be determined from the terms thereof and not necessarily from the acts of the parties. In determining whether there is a contravention of the law, both note and mortgage must be considered together as' a part of the same transaction.
 
 McClelland
 
 v.
 
 Sorter,
 
 39 Ohio St., 12. A statute like the one here involved should receive such interpretation as will accomplish the purpose intended.
 
 Rice
 
 v.
 
 Franklin Loan & Finance Co.,
 
 82 Colo., 163, 258 P., 223. In
 
 Frorer
 
 v.
 
 People,
 
 141 Ill., 171, at page 185, 31 N. E., 395, 16 L. R. A., 492, the court in commenting upon laws of this nature said :
 

 “Usury laws proceed upon the theory that the lender and the borrower of money do not occupy towards each other the same relations of equality that parties do in contracting with each other in regard to the loan or sale of other kinds of property, and that the borrower’s necessities deprive him of freedom in contracting, and place him at the mercy of the lender. And such laws may be found on the statute books of all the civilized nations of the world, both ancient and modern. See Tyler on Usury, 61;
 
 Dunlap
 
 v.
 
 Gould,
 
 16 Johns., 377.”
 

 It is urged that since the personal property covered by the mortgage was household goods, by reason of
 
 *338
 
 Section 8566, General Code, the provision in the chattel mortgage for disposing of the mortgaged property ■without foreclosure had no application. This is in effect saying that the provision for private seizure could not have been carried out in any event for the reason that it violated Section 8566, General Code, prohibiting the sale of household goods without foreclosure proceedings at law. This is a rather strange theory to attempt to justify or excuse the illegal provision in the chattel mortgage by the admission that it was in conflict with two statutes instead of only one.
 

 Section 6346-5, General Code, is rather explicit as to what may or may not be done by a licensed dealer. In granting a licensed dealer the extraordinary right to charge and collect three per cent per month, the statute clearly and unequivocally provides that there shall be no other charge — no bonus, no fees, no expenses or demands of any nature whatsoever — other than the inspection fee. The next section then states: “If interest, consideration or charges in excess of those permitted by this act shall be charged,
 
 contracted
 
 for or received, the contract
 
 and all the papers
 
 in connection therewith shall be void and the licens'ee shall have no right to collect * * (Italics ours.) There is no ambiguity in the language used; nor does it need any clarification. Under this statute the stakes and lines are definitely set, marking the boundary beyond which the lender may not go. The note and chattel mortgage in the instant case are void.
 

 It is claimed by plaintiff that the notice of appeal from the Court of Common Pleas to the Court of Appeals was ineffective and did not comply with the statute. When the motion for a new trial was overruled by the Court of Common Pleas, a journal entry was placed on record as follows:
 

 “This cause being heard on the motion for a new trial, the court, on consideration, overrule the same,
 
 *339
 
 to which ruling the defendants' except; and defendants hereby give notice of appeal.
 

 “Approved.
 

 “George & Leasure & Lind,
 

 “Attys’ for defendants.
 

 “Meyer, Johnson & Kincaid,
 

 “Attys. for pltf.”
 

 While this type of notice of appeal is rather unusual under the new Appellate Procedure Act, nevertheless it conformed to the practice previously followed. Although not complying in a technical sense with Section 12223-5, General Code, it appears to have served the purpose intended.
 

 Manifestly, the purpose of such a’notice is to apprise the opposite party of the taking of an appeal. Since such journal entry was approved by counsel for both parties, both had actual notice thereof. Under the circumstances plaintiff could not be prejudiced or taken by surprise. There was'only one judgment and only one court from which and to which an appeal could be taken.
 

 The Court of Appeals, while not commending such practice, held the notice of appeal to be sufficient. In this we find no error.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman and Gorman, JJ., concur.