APPLEBAUM, APPELLEE, *v.* SMITH ET AL., APPELLANTS.

(No. 4804—Decided December 13, 1954.)

*Mr. Cyrus G. Jaffee,* for appellee.
*Messrs. Winchester & Winchester,* for appellants.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Lucas County. The parties will be referred to in this opinion as they appeared in the Court of Common Pleas—the plaintiff-appellee as the plaintiff, and the defendants-appellants as the defendants.

The petition of the plaintiff in the Court of Common Pleas contained two causes of action. The first cause of action alleged in substance that on July 3, 1952, defendants executed and delivered to Jacob Golner their promissory note in the principal sum of $1,100 with interest at the rate of 6 per cent per annum, payable at the rate of $35 or more per month com-

mencing on August 3, 1952, and that on July 15, 1952, plaintiff purchased said note for a valuable consideration and thereby became a bona fide holder of the note for value in due course.

It was alleged further in the first cause of action that the note provided that if any installment of principal or interest should not be paid when due it should bear interest at the rate of 8 per cent per annum, and that the note also contained a provision that if defendants should be in default for 30 days in the payment of principal or interest, then the entire principal sum with interest should become due and payable.

Plaintiff alleged further that all the installments payable by the terms of said note becoming due on November 3, 1952, and thereafter were delinquent for more than 30 days and that, therefore, there was due plaintiff from the defendants the sum of $1,011.10 with interest at the rate of 8 per cent per annum from October 3, 1952, and interest at the rate of 8 per cent on all overdue installments of interest.

The second cause of action in the petition incorporated by reference all the allegations of the first cause of action and alleged the execution by the defendants of a mortgage encumbering certain real estate described and owned by the defendants to secure the payment of the promissory note referred to in the first cause of action, and that the conditions of the mortgage had been broken, and also that plaintiff was required to pay an insurance premium in the sum of $49 for insurance coverage on the mortgaged premises.

The prayer was for a judgment upon the promissory note in the sum of $1,011.10 with interest at the rate of 8 per cent, and, also, for a judgment for the sum of $49 representing the amount paid for insurance with interest at 6 per cent, foreclosure of the mortgage, and for a sale of the real estate described and a marshalling of liens.

The defendants filed their answer and cross-petition in which they admitted the execution of the promissory note described and that defendants were in default for certain payments. Defendants admitted also the execution of the mortgage and denied generally all the other allegations of the petition.

Answering further and by way of cross-petition, the de-

fendants alleged affirmatively that on July 3, 1952, they borrowed the sum of $500 from Jacob Golner; that Jacob Golner exacted from them the promissory note in the sum of $1,100, which was sued on by the plaintiff; that the plaintiff was not a bona fide purchaser of the note; and that plaintiff purchased the note with actual notice of the usury practiced against the defendants by Jacob Golner.

The defendants alleged further that they were willing to pay the amount owed by them on the note with legal interest thereon and prayed the court to require a reduction in the amount of the note to the sum of $500, being the amount loaned to the defendants.

The trial in the Court of Common Pleas was had before the court without the intervention of a jury and resulted in a judgment in favor of the plaintiff in the sum of $1,104.63 with interest at the rate of 6 per cent from April 20, 1954, and the court further ordered that, unless the defendants made payment to the plaintiff of such amount within 30 days, the mortgage be foreclosed, the real estate sold and the judgment satisfied from the proceeds of such sale. The relief prayed for in the cross-petition of the defendants was denied and the cross-petition was dismissed. Thereafter a motion for new trial filed by the defendants was overruled by the trial court.

The case is before this court for a review upon a transcript of the proceedings in the Court of Common Pleas, the bill of exceptions, and the briefs and oral arguments of counsel for the respective parties.

Two issues determinative of this appeal are presented by the record before us, as follows:

Was the promissory note in the sum of $1,100 violative of the laws of the state in effect, limiting the rate of interest which may be charged, thereby rendering such note usurious? In the event it be determined that the note provided for the payment of a rate of interest contrary to law, was the plaintiff a holder of the note in due course?

The provisions of the Revised Code relating to interest, being applicable and pertinent to the transaction involved in the case now before the court, are as follows:

Section 1309.01. "The parties to a bond, bill, promissory note, or other instrument of writing for the forebearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding eight percent per annum, payable annually."

Section 1309.02. "Upon all judgments, decrees, or orders, rendered on any bond, bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with Section 1309.01 of the Revised Code, interest shall be computed until payment is made at the rate specified in such instrument."

Section 1309.03. "In cases other than those provided for in Sections 1309.01 and 1309.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, or settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of a contract, or other transaction, the creditor is entitled to interest at the rate of six per cent per annum, and no more."

Section 1309.04. "Payments of money or property made by way of usurious interest, whether made in advance or not, as to the excess of interest above the rate allowed by law at the time of making the contract, shall be taken to be payments made on account of principal; and judgment shall be rendered for no more than the balance found due, after deducting the excess of interest so paid."

It appears from the evidence in the record before the court that on the date of, and contemporaneous with, the execution and delivery of the note and mortgage to Jacob Golner, the defendants also affixed their signatures to an instrument designated a contract, appearing in the record as an exhibit as follows:

"Toledo, Ohio, July 3, 1952.

"J. Golner, Toledo, Ohio.

"Dear Sir:

"For your procuring for us, a purchaser for a second mortgage and note, or a series of notes, for eleven hundred dollars, with monthly payments of thirty-five dollars, including inter-

est at six (6%) percent, which we will execute to you, your heirs and assigns, on our property, for the purpose of your discounting said mortgage and note, or notes fifty (50%) percent, or $550 Dollars, we will pay you for your work and labor .... percent, or ...... dollars.

"Location/Description of Property.

"3101 N. Erie St., Toledo, Lucas Co., Ohio.

"We will furnish a certificate of title showing our property to be free and clear, other than a mortgage, not to exceed $3,500 dollars.

"We will pay the mortgagees expense of his attorney for the examination of the certificate of title.

"Hiram C. Smith

"Ivah P. Smith.''

It is also disclosed by the evidence in the record that the plaintiff, Dorothy Applebaum, was at the time of the trial in the Court of Common Pleas and at the time of the execution and delivery of the several papers and documents involved in the case the wife of Jacob Golner, and that both were living at the same place of residence as man and wife, and the record does not disclose that defendants knew or were informed by Jacob Golner that such relationship existed between plaintiff and Jacob Golner.

It appears further from the evidence in the record that Jacob Golner dictated and mailed a notice signed by plaintiff in the form of a letter addressed to the defendants, respecting the acquisition by the plaintiff of the note and mortgage, and directing the manner in which payments should be made, a carbon copy of which is before us in the record, as follows:

"Toledo, Ohio, July 15, 1952.

"Hiram & Ivah Smith,

"3101 No. Erie St.,

"Toledo, Ohio.

"Dear Sir & Madam:

"The mortgage dated July 3, 1952, executed by both of you to Jacob Golner, for the sum of Eleven Hundred ($1,100) Dollars, payable thirty-five ($35) dollars monthly purchased by the writer.. Said payments beginning on the 3rd of this coming month.

"Please forward your payments to Mr. Golner, who will act as the writer's Agent in the matter.

"Sincerely yours,

"Dorothy Applebaum,

"337 W. Central Av.,

"Toledo 10, Ohio."

It also appears and is undisputed that prior to the commencement of this action defendants had made three payments of $35 each to the plaintiff toward the payment of the loan.

We find, and so hold on the evidence in the record before us on this appeal, that Jacob Golner advanced or loaned the defendants the sum of $500, and that, to the extent of the excess of that amount in the sum of $600, the note in the sum of $1,100 contravenes the laws of the state controlling the permissible rate of interest chargeable, as hereinbefore quoted, and was, therefore, to such extent illegal and usurious.

The foregoing conclusion based on the record in this case is in accord with the established policy of the courts of this state in the analysis of transactions, wherein it appears to have been the purpose of persons in commercial transactions to evade the laws of the state designed to prohibit usury, and such settled policy in this state concerning the subject has been well stated in 40 Ohio Jurisprudence, 833, Usury, Section 11, as follows:

"Devices to Conceal Usury. The cupidity of lenders and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to obtain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devices to evade the usury laws; and to frustrate such evasions the courts have been compelled to look beyond the form of the transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered. The question is not what have the parties called the transaction, but, what do the facts and circumstances require the court to call it. The court will scan the transaction carefully to ascertain its real substance for the purpose of determining whether it is a disguised loan or something else. Ordinarily each case must be decided

upon its own particular facts. If the total amount contracted to be paid at any time, by the borrower for the use of the money actually received, for the period of time it is used, regardless of the names used for various charges, is in excess per annum of 8 percent, then the excess is usurious. It matters not as to the form which the usurious transaction may be made to assume, whether it is plainly written on the face of the bond, added to the principal debt, paid in advance, evidenced by a collateral agreement, embodied in a contemporaneous verbal agreement or in a note and mortgage made to a third party who has no interest therein and who transfers it to the lender, or is called a premium.

"That a transaction is a shift or device to evade the usury law may be established by proving facts from which such purpose may be inferred. But whatever the shifts or devices resorted to to get more than legal interest may be, they must enter into and be of the substance of the contract at the time it is made, to make it usurious."

This court is compelled to its above conclusion by reason of the lack of any evidence of probative value tending to support the claim of Golner that he contemplated or did render any services on behalf of the defendants which would justify the compensation to be paid him under the terms of the novel employment contract which he required the defendants to sign. It is also obvious that the loan could have been made directly by the plaintiff to the defendants, providing for a rate of interest which would be in conformity with the laws of the state, as there is practically a total lack of evidence in the record before us that Golner exerted, or that he intended to exert, any effort justifying extraordinary compensation in attempting to secure money to be loaned to the defendants from sources beyond his own immediate family.

With a view to limiting this opinion within reasonable bounds, the writer will not undertake to comment upon the analogy existing in many of the reported decisions of reviewing courts in the state and the case now before the court, but will cite as being analogous the following:

*Critchfield* v. *Mahoney*, 42 Ohio Law Abs., 540, 541; *Independent Foods, Inc.*, v. *Lucas County Savings Bank*, 46 Ohio

Law Abs., 434, 70 N. E. (2d), 139; *In re Proteau,* 67 Ohio Law Abs., 515, 110 F. Supp., 904 (Affirmed, *Thompson* v. *Herberich-Hall-Harter Co.,* 202 F. (2d), 954); *Dunkle* v. *Renick,* 6 Ohio St., 527; *Lockwood* v. *Mitchell,* 7 Ohio St., 388; *McClelland* v. *Sorter,* 39 Ohio St., 12; *Capital Loan & Savings Co.* v. *Biery,* 134 Ohio St., 333, 16 N. E. (2d), 450.

This court has reached the further conclusion respecting the remaining and decisive issue on this appeal, whether the plaintiff was a holder in due course of the note in question, that as a matter of law the plaintiff, in view of the almost wholly undisputed evidence in the record, was not a holder in due course of the note upon which the Court of Common Pleas entered the judgment now before this court.

The applicable provisions of the Negotiable Instrument Law of the state (Revised Code) to the facts in the record before the court are as follows:

Section 1301.54. ''A holder in due course is one who has taken the instrument under the following conditions:

''(A) That it is complete and regular upon its face;

''(B) That he became the holder of it before it was overdue, and without notice that it previously had been dishonored, if such was the fact;

''(C) That he took it in good faith and for value;

''(D) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

Section 1301.57. ''The title of a person who negotiates an instrument is defective within the meaning of Sections 1301.01 to 1301.86, inclusive, and 1303.01 to 1303.47, inclusive, of the Revised Code, when he obtained the instrument, or any signature thereto, by fraud, duress, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.''

Section 1301.59. ''A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for its full amount against all parties liable thereon.''

Section 1301.60. ''In the hands of any holder other than a

holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. A holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to all parties prior to such former holder.''

Section 1301.61. ''Every holder is prima facie a holder in due course. When it is shown that the title of any person who negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. The last rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.''

We believe that the established judicial interpretation of the applicable provisions of the Negotiable Instrument Law of the state pertinent to the legal status of the plaintiff as a holder of the note in issue in this case has been stated in the syllabus in *Regan* v. *Sherman,* 1 Ohio App., 273, as follows:

''By virtue of Sections 8157 and 8164, General Code, in an action on a promissory note by an endorsee who acquired title from the original holder, when it is shown that the title of the original owner was defective by reason of misrepresentation and fraud in procuring the note and failure of consideration therefor, the burden is on the holder to prove that he acquired the title as a holder in due course.''

In the case of *Thompson* v. *Citizens National Bank of Adams, New York,* decided by the Circuit Court for Lucas County, 13 C. C. (N. S.), 515, 22 C. D., 131, in the second paragraph of the syllabus, we find a like interpretation of the law applicable:

''Under the provisions of Section 8110, General Code, in an action on a note by an endorsee the burden is on the holder of the note to show, when a defense has been established against the original payee, that he or some one under whom he claims acquired the title as a holder in due course.''

It should be noted that the decision of the Circuit Court in the *Thompson case, supra,* was affirmed by the Supreme Court without opinion, 82 Ohio St., 446. See, also, *National City Bank of Cleveland* v. *Erskine & Sons, Inc.,* paragraph one of the headnotes, 65 Ohio Law Abs., 51, 110 N. E. (2d), 593; *Discount &*

*Deposit State Bank* v. *Litt,* 5 Ohio App., 439; *Bradley* v. *Apex Loan Co.,* 11 Ohio Law Abs., 264; *Yates* v. *Bates,* 34 Ohio Law Abs., 378, 37 N. E. (2d), 395.

Also, it is the view of the writer of this opinion that under the title "Of Bona Fide Character," 29 Ohio Jurisprudence, 1264, Negotiable Instruments, Section 609, the principles of law pertinent to the issue now under consideration as established in this state are stated clearly, and, as stated, are supported uniformly by the decisions of the courts.

It is therefore the finding and judgment of this court that the amount of the loan made to the defendants as shown by the evidence in the record before us was the sum of $500, upon which sum the plaintiff.is entitled to interest at the legal rate of 6 per cent per annum computed from July 3, 1952, and that defendants are entitled to credit for the payments hereinbefore referred to in the aggregate sum of $105.

We consider that the foregoing finding of this court is sanctioned by, and is in accord with, the decision of the Supreme Court in the case of *McClelland* v. *Sorter, supra.*

The judgment of the Court of Common Pleas is, therefore, modified in accord with the above finding and, as modified, is affirmed.

*Judgment modified and, as modified, affirmed.*

FESS and CONN, JJ., concur.