ANGEVINE, APPELLANT, *v.* MIDWEST FINANCE CORP., APPELLEE.[*]

(No. 5509—Decided February 13, 1962.)

*Mr. Victor A. Rosenberger, Jr.,* and *Mr. Anthony R. Zingarelli,* for appellant.
*Mr. Norman E. Bischoff,* for appellee.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas entered following a verdict of a jury directed at the conclusion of the evidence offered by the plaintiff.

The appellant will be referred to hereinafter as the plaintiff and the appellee as the defendant, as the parties appeared in the trial court.

The plaintiff is an automobile dealer dealing in used automobiles, and the defendant is a small loan licensee operating a loan business pursuant to Sections 1321.01 to 1321.19, inclusive, Revised Code.

___

[*]Judgment affirmed, 174 Ohio St., 153.

The action of the plaintiff is to recover $14,550, representing a reserve withheld by the defendant from loans made pursuant to agreement, $5,700 alleged as interest wrongfully received by the defendant and the sum of $25,000 as exemplary damages.

On November 26, 1957, plaintiff and defendant entered into an agreement as follows:

"We, the undersigned hereby agree on the following reserve plan to begin November 26th, 1957, covering the retail sale of automobiles sold to individuals by Duane's Used Cars, 1804 Adams Street, Toledo, Ohio, and financed by Midwest Finance Corporation.

"We, Midwest Finance Corporation are to hold a 20% reserve on all deals up to and including $550.00 and a 15% reserve on all deals above $550.00. All losses are to be charged against this reserve and after an account becomes 60 days past due according to contract must be charged off. On December 1st, 1958, and every 6 months thereafter Midwest Finance Corporation will adjust this reserve and Duane's Used Cars will be paid the excess on accumulated reserve above 20% of the then existing balance. This 20% applies to existing balance on business acquired from Duane's Used Cars starting December 2nd, 1957.

"Duane's Used Cars
By (s) Duanse Angevine
"Midwest Finance Corporation
by (s) George S. Graver."

The record before us on this appeal discloses that the defendant made loans to customers of the plaintiff pursuant to the above agreement substantially as stated in plaintiff's brief as follows:

"4. That from on or about November 26, 1957, to November 3, 1958, the defendant made 219 loans to plaintiff's customers from which the defendant withheld from the money that it had been directed to pay to the plaintiff the sums set forth in plaintiff's exhibit 14 consisting of 56 pages and 219 accounts and that the total amount of money so withheld totals fourteen thousand three hundred eleven and 50/100 dollars ($14,311.50). (See stipulation, bill of exceptions, page 80.)

"5. Defendant retained the monies that it had been directed to pay to the plaintiff by plaintiff's customers in its regular checking account. (Admitted by defendant on cross-examination, see bill of exceptions, page 29, page 43, page 605-6.)

"6. That the plaintiff or plaintiff's fund became contingently obligated in an amount in excess of one thousand dollars ($1,000.00) on more than one small loan account on the 11th day of December, 1957. (See stipulation, bill of exceptions, page 100.)

"7. The evidence shows that on each and every loan account paid by the plaintiff pursuant to said agreement, and prior to this action, the defendant included charges for interest at the maximum small loan rate. (See plaintiff's exhibits 2-A, 2-D, 2-E, 4-A, 8-A, 9-C, 10-B, 11-B, 11-A, 12-A, 16-A, 17-A, 18-A, 18-B, 19-A, 19-B, 19-C, 20-A, 52 through 67, inclusive, and 74 through 82, inclusive, a total of 43 loans.)

"8. That payment by the plaintiff of the loan accounts marked plaintiff's exhibits 52 through 67, include charges for interest in excess of eight per cent per annum on each of said accounts. (Stipulated, page 289, bill of exceptions.)

"9. The stipulation referred to in the bill of exceptions at page 289, was enlarged to include all loan accounts paid by plaintiff directly and to specifically include plaintiff's exhibit 74A, 75A and 76 through 82, inclusive. (See bill of exceptions, page 304.)

"10. Defendant admits by supplemental answer filed October 12, 1961, that it is indebted to the plaintiff in the sum of twenty-four hundred twenty-six and 06/100 dollars ($2426.06)."

The stipulation referred to in plaintiff's specification number 9 above and appearing in the bill of exceptions, page 304, is as follows:

"Mr. Zingarelli: May I speak off the record? May I enter our stipulation in the record?

"The Court: Let the record so show. I thought we stipulated on that before.

"Mr. Bischoff: That was to those accounts, I believe. I will go farther and stipulate it is as to all accounts paid by Duane's directly; accounts arising out of the agreement and interest was charged.

"Mr. Zingarelli: And including loans that are shown by plaintiff's exhibits 74 A, 75 A and 76 through 82, inclusive. Is that so stipulated?

"Mr. Bischoff: Yes, I stipulate that, suree."

The provisions of Section 1321.13, Revised Code, pertinent to an interpretation of the agreement between plaintiff and defendant and the loans made pursuant to that agreement are as follows:

"* * * In addition to the charges under this section, no further or other charges, *consideration*, or amount shall be directly or indirectly charged or received by any licensee for any loan made under Sections 1321.01 to 1321.19, inclusive, of the Revised Code, except the fees actually paid out by a licensee to any public official for filing or recording in a public office any instruments securing the loan. Court costs upon the actual foreclosure of the security or upon the entry of judgment are not charges within the meaning of this section.

"If any charges in excess of those permitted by Sections 1321.01 to 1321.19, inclusive, of the Revised Code, are charged or received, except as the result of an unintentional error of computation, the contract of loan and all papers in connection therewith are void and the licensee and any assignee of such contract have no right to collect or receive any principal or charges.

"Any charges paid in excess of those provided in this section may be recovered by the payer in an action at law." (Emphasis added.)

Section 1321.15, Revised Code, provides:

"No licensee shall charge, contract for, or receive, directly or indirectly, charges greater than such licensee would be permitted to charge, contract for, or receive without a license under Sections 1321.01 to 1321.19, inclusive, of the Revised Code on any part of an indebtedness for one or more than one loan of money if the amount of such indebtedness is in excess of one thousand dollars. *For the purpose of the limitations set forth in this section, the amount of any such indebtedness shall be determined by including the entire obligation of any person to the licensee for principal, direct or contingent or both, as borrower, indorser, guarantor, surety for, or as spouse of any borrower or otherwise, whether incurred or subsisting under*

*one or more than one contract or transaction, except that any contract of indorsement, guaranty, or suretyship that does not obligate the indorser, guarantor, or surety for any charges in excess of eight per cent per annum, is not included in such entire obligation.* If a licensee acquires, directly or indirectly, by purchase or discount, bona fide obligations for goods or services owed by the person who received such goods or services to the person who provided such goods or services, then the amount of such purchased or discounted indebtedness to the licensee shall not be included in computing the aggregate indebtedness of such borrower to the licensee for the purpose of the prohibitions set forth in this section.'' (Emphasis added.)

The issue determinative of this appeal is whether the contract between the plaintiff and defendant was violative of Section 1321.01 *et seq.*, Revised Code, when such contract is considered in connection with the loans and transactions made and concluded pursuant to that agreement.

The trial court determined that the agreement and transactions which were concluded pursuant to that agreement were not a violation of the requirements of the Revised Code, directed the jury to return a verdict in favor of the defendant, and entered a judgment upon the verdict. In entering judgment in the Common Pleas Court against the plaintiff, the journal entry provided ''that the within judgment shall be without prejudice to an action for a general accounting.''

We have reached the conclusion that the judgment of the Common Pleas Court should be affirmed with the modification that the judgment should be without prejudice to an action at law. *Willson Improvement Co.* v. *Malone,* 78 Ohio St., 232; *Complete Building Show Co.* v. *Albertson,* 99 Ohio St., 11; *Wall* v. *Dayton Federation Co.,* 121 Ohio St., 334.

We reach the conclusion that the judgment of the trial court should be affirmed and determine further that the judgment upon which we have agreed is in conflict with the judgment of the Court of Appeals for Lorain County in *McFadden* v. *Public Loan Corp.,* 71 Ohio App., 407.

We quote a pertinent part of the opinion in *McFadden* v. *Public Loan Corp., supra,* pp. 411-412:

'' 'A statute like the one here involved [Section 6346-5a, General Code] should receive such interpretation as will accom-

plish the purpose intended.' *Capital Loan & Savings Co.* v. *Biery,* 134 Ohio St., 333, at p. 337, 16 N. E. (2d), 450.

"From an examination of the last paragraph of the above section, it is apparent that the Legislature intended to prohibit the licensee from directly or indirectly charging, contracting for or receiving interest or consideration greater than permitted by the statute, under penalty of having the contract voided, and the right to collect principal, interest or charges forfeited.

"The facts of the instant case do not present a situation where charges above those allowed by statute were erroneously or inadvertently made.

"It will be observed that the second note provides for the monthly payment of interest on the amount of the loan above $300 at the rate of two-thirds of 1% a month. Such an exaction of interest is in excess of the 8% per annum limit fixed by the provisions of the statute.

"The terms of the written contract executed by defendant and plaintiff as to the second note, show a clear intention on the part of the defendant to exact interest on $300 at the rate of $2\frac{1}{2}\%$ a month, and this at a time when there was owing to defendant by plaintiff an additional sum in excess of $135.33.

"In addition to the contract itself, the exhibits show that defendant did charge, collect and credit the payments made on the second note in accordance with the provisions of said note, and thus charged $2\frac{1}{2}\%$ on a sum (represented by the two notes) substantially greater than $300.

"Such procedure to us indicates that the defendant intended to and did contract for, charge and receive interest upon said second note in excess of that permitted by statute."

Plaintiff's assignments of error are overruled and the judgment of the Court of Common Pleas is affirmed and the cause remanded for execution for costs, without prejudice to an action at law. As indicated hereinabove, it is ordered that this cause be certified to the Supreme Court for review and final determination.

*Judgment affirmed.*

SMITH, P. J., and FESS, J., concur.