## EATON *v.* ALGER.[*]

A receipt for a note, with the words, " which I agree to account for on demand," is not a contract of bailment, nor within the rule which excludes parol testimony to vary a writing, but is explainable as a receipt, especially by third persons.

A charge, in addition to interest, for trouble and expense incurred by the lender in procuring the money to loan, is not necessarily usury.

Josiah Eaton (for whom, on his death, Abigail W. Eaton and others, administratrix, &c., were substituted) sued John P. Alger and Wilkes T. Alger, in September, 1858, upon a promissory note made by the former, and indorsed by the latter defendant, and payable to Ira M. Clark, or bearer; which note, the plaintiff alleged, was assigned by said Clark 'to him, previous to the commencement of this action.

Upon the defense that, 1. The note was usurious; and, 2. The plaintiff was not the real party in interest, the plaintiff was nonsuited. The court at general term affirmed this judgment, and plaintiff appealed.

*E. Cowen,* for plaintiffs, appellants.

*A. Pond,* for defendants, respondents.

BY THE COURT.—WRIGHT, J.—The plaintiff's intestate was nonsuited on the ground that his own evidence established that he was not the owner of the note, and, also, that the note was void for usury. The supreme court, at general term, only considered the question of title to the note, and the exceptions to the rejection of evidence on that point, and, arriving at the conclusion that the nonsuit was sustainable on the ground that the plaintiff had affirmatively shown title out of himself, omitted considering the further question whether he had, also, as was held at the circuit, shown that the note was usurious.

[*] The decision in this case was re-affirmed by this court, on another appeal, in 47 *N. Y.* 345; affirming 57 *Barb.* 179.

On the point stated in the first head-note above, compare Seymour *v.* Cowing, in this series, and McDougall *v.* Cooper, 31 *N. Y.* 498; Hotchkiss *v.* Mosher, 48 *N. Y.* 478.

On that in the second head-note, see Lee *v.* Chadsey, in this series, and Bell *v.* Day, 32 *N. Y.* 165.

I think that the nonsuit cannot be sustained on either ground; and that the rulings of the judge, in rejecting evidence of the plaintiff's ownership of the paper, on the assumption that the instrument, in the nature of a receipt, expressed the whole contract of transfer to the plaintiff, which was a contract of bailment, simply, and that in an action against the defendants on the note, the plaintiff was estopped from showing an actual sale and delivery of it to him upon a valuable and full consideration,—were erroneous.

1. The note was payable to bearer, and transferable by mere delivery. The plaintiff was in possession of it, and produced it on the trial. This was sufficient evidence of his title; and if it were any defense, to be urged by the defendants, that some person other than the holder was the real owner, the *onus* was on them of establishing it. Indeed, I cannot see how the defendants could, for such reason, defeat the action, except, possibly, on the ground that every action must now be prosecuted in the name of the real party in interest; and then, the objection should have been distinctly taken by demurrer or answer. It seems to me no defense to the maker of a negotiable promissory note, transferable by mere delivery, that, as between the holder and a former owner, there has not been, in judgment of law, an effectual transfer of the paper. But let this pass. Here, after excluding all affirmative evidence offered by the holder to show title in himself, and adroitly foisting into the case a receipt given by him at the time of the alleged transfer, which is held to be the whole contract, in relation thereto, and that, a contract of bailment, not to be explained or contradicted by parol, the holder is nonsuited, for the reason that it appears by his own evidence that he was not the real owner. Clark, the original payee, who was called by the plaintiff to disprove the allegations of usury, on cross-examination was asked whether, at the time he transferred the note to the plaintiff, he took back any writing with regard to it, whereupon he answered in the affirmative. Subsequently, when interrogated unnecessarily by the plaintiff's counsel, as to the terms of the transfer, the question was objected to, on the ground that the transaction was in writing, and the objection sustained. I am inclined to think that this ruling was incorrect. It was, so far as the defendants

were concerned, entirely a collateral matter. The witness then testified: "This paper" (showing it) "is the receipt I took upon that occasion;" at the same time stating that the paper did not contain all the terms of the agreement of transfer. The writing was produced, and was of this purport:

"Received of Ira M. Clark, a note against J. P. Alger, indorsed by W. S. Alger, for six hundred and twenty-nine dollars and seventy-five cents, which I agree to account for on demand. JOSIAH EATON."

The paper being thus in evidence, the question, "What was the contract of sale of the note, if any?" was excluded, on objection of the defendant, that the receipt contained the whole contract, and parol evidence was not admissible to add to or explain it; and also an offer to show that, at the time the receipt was executed, the witness sold and delivered the note to the plaintiff upon a valuable and full consideration, was rejected under like objection, and for like reasons. Having thus succeeded in excluding all affirmative proof of ownership of the note, on the part of the plaintiff, which was quite unnecessary, unless the writing called a receipt conclusively showed title out of him, he is nonsuited on the ground that it appeared, by his own evidence, that he was not the true owner.

These rulings, and the result attained thereby, seem to me clearly erroneous. If it be true, as it is not, that the plaintiff was estopped from showing a sale and delivery of the note to him for a valuable consideration, the receipt did not furnish conclusive evidence that the title was not in him. He was the holder and presumptive owner, and the evidence furnished by the paper did not conclusively overcome that presumption. It is not pretended that it did, unless it is, upon its face, a complete and perfect contract of bailment. In the court below, two of the judges held it to be that, and nothing else, whilst another was equally positive that it imported a contract of sale. The truth is, that it is not a complete agreement of either description. It is an acknowledgment by the plaintiff of the receipt of the note from Clark, and a further acknowledgment of liability for it, but the paper is wholly silent as to the kind of

liability imposed upon the plaintiff by its execution. It is certainly not, on its face, a contract of bailment. It contains no acknowledgment of any title in Clark, no agreement to redeliver the note, and no statement of any use to be made of it by the plaintiff, or of any duty to be performed by him in regard to it. There is no express promise to return the identical note to Clark, nor can any such promise be implied from its language. If the receipt be a contract of bailment, I imagine it would be quite difficult to assign it a place among the five species or classes of bailments known to the law; and if not a complete contract of that description, it furnished no evidence, conclusive or inconclusive, that the title to the note was not in the plaintiff.

But again, after the judge had ruled that the receipt imported a bailment, it was offered to be proved, by the testimony of both of the parties to it, that they made a contract of sale, and that the note was delivered to the plaintiff in pursuance thereof; and, further, that, if the receipt imported a bailment, it failed to express the true agreement between the parties. This proof, on objection of the defendants, was excluded, on the ground that the paper contained the whole contract of transfer, and parol evidence was inadmissible to add to or explain it; and also that the action was not one to reform the instrument on the ground of mistake. This ruling cannot be legally sustained. The defendants were entire strangers to the receipt, claiming nothing under it, and having no interest in the note, the subject matter of it. Their rights could not be affected, in the slightest degree, by the alleged transfer, for a payment of the note to the plaintiff would be just as beneficial to them as a payment to Clark. Both Clark and the plaintiff agreed that the true contract was a sale of the note, and both, also, agreed that the written contract, if rightly construed by the court, was not the true one; yet, at the instance of the defendants, who were strangers to the transaction, they are held to an agreement which they both say that they did not intend to make. There was no question as to reforming the contract, for the only parties interested in it were agreed as to its nature; and, if it was a mutual mistake, and they could correct it at all, they could do it at the trial. Evidence was offered for that purpose, and re-

Eaton *v.* Alger.

jected. It is not the law that, if parties execute an instrument by mistake, which does not express the contract between them, they are bound by that mistake, as to third persons, until it is actually corrected. But, further, the plaintiff was not estopped by the receipt from showing, by parol, the real agreement of transfer. The general rule is that estoppels are mutual. Parties to an instrument are mutually precluded from varying it by parol; but the rule does not apply to persons who are neither parties nor privies to the contract, and whose rights are not affected thereby. It cannot be doubted that, if the rights of the defendants were injuriously affected by the receipt, they could contradict it by parol; and, therefore, the parties to the receipt are not estopped as to them, and, in an action with them, may show the real agreement by parol.

2. It was equally an error to have nonsuited the plaintiff on the ground that he had, himself, proved that the note was usurious and void. The note in suit was given in renewal of one for six hundred dollars, made in July, 1857, by one Samuel Burpee and John P. Alger, and payable to Ira M. Clark, or bearer. The circumstances under which the last mentioned note was given, as the plaintiff showed by two witnesses, were these: In July, 1857, Clark (who resided at Newport, in the State of Hampshire, but was temporarily staying at Saratoga Springs) was applied to by Burpee, at the Springs, to lend him six hundred dollars, which he stated he wanted to pay a note he was then owing at the savings bank, Springfield, Vermont. The security he proposed was satisfactory, but Clark informed him that he had not the money with him; that it was at Newport, in the bank, and that it would be attended with considerable trouble and expense to go after it. Burpee inquired as to the probable expense, and was told twenty-five dollars at least; and he said he would give him (Clark) twenty-five dollars if he would go and get him the money; and as he wanted it to pay out at Springfield, he would meet him (Clark) at Bellows Falls the following Friday, and bring a note with one or more names to it of persons (among them John P. Alger) that had been suggested as sureties. Clark promised to go immediately; and did go the next morning to Newport, and from thence to Bellows Falls on Friday, and there remained waiting for Bur-

Eaton *v.* Alger.

pee until the next morning, when he went back to Newport, stayed there over Sunday and returned to Saratoga on Monday. He paid, for expenses of this trip, over twenty dollars. On his return to Saratoga he met Burpee at John P. Alger's house, and let him have the money, taking a note therefor of six hundred dollars, made by Burpee and Alger. After Burpee had received the money, and was about leaving, Clark said to him, " Burpee, what about the matter of expenses ? " when Burpee replied, " I do not want to give you the money to-day, but will give you my note on demand ; and pay it in a short time." Clark wrote a note for twenty-five dollars and Burpee signed it.

It was upon this proof, substantially, it was adjudged that the plaintiff had himself shown the note to be usurious, and was accordingly nonsuited. I regard this a plain error. The evidence tended to show that the twenty-five dollar note (which it was claimed in the pleading, was without any legal consideration, and rendered the six hundred dollar note void for usury) was given to repay Clark for trouble and expense incurred by him, at the request of Burpee the borrower, in going to Newport for the money, and that the amount of the note was only two or three dollars more than the actual expenses of the trip. If this were so there was no usury. But, manifestly, the proof did not disclose a transaction usurious *per se*. Whether or not the trip to Newport for the money was intended as a cover for usury, was a matter for the consideration of the jury. If the jury believed that it was undertaken in good faith, at Burpee's special request, and upon his promise to reimburse for the trouble and expense of the journey, then the taking of the twenty-five dollar note did not render the transaction usurious. Even when the lender without any special agreement with the borrower, in addition to lawful interest, takes a commission by way of compensation for trouble and expense necessarily incurred in and about the business of the loan, the transaction would be supported, provided such commission was not intended as a device to cover a usurious loan.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All the judges concurred.

Judgment reversed, and new trial ordered, costs to abide event.