LONDON REALTY COMPANY, Appellant, *v.* ELIZABETH RIORDAN, Respondent.

**Usury** — when exaction from borrower of expenses of making loan on personal property is usury — **Banking Law** — construction of provision thereof regulating charges for interest and expenses of loans on personal property.

1. Under the general usury laws of the state a requirement that the borrower shall pay the cost of having the title of mortgaged property examined and the other expenses attendant on the loan does not render the loan usurious. Where, however, payment is exacted from the borrower under the guise of defraying the expenses of a loan which is in reality a mere cover for usury the transaction is illegal.

2. Section 312 of the Banking Law, which authorizes corporations organized under article 10 of that law to charge and receive, on mortgage loans made by them, interest at two per cent per month, and also for the examination of the property and all expenses attendant the loan, a sum not exceeding two dollars if the loan exceeds fifty

dollars, and but one dollar if the loan is for fifty dollars or less, construed in connection with section 314, forbids a lender to exact any other charge either in his own favor or in favor of any one else.

*London Realty Co.* v. *Riordan*, 148 App. Div. 854, affirmed.

(Argued December 10, 1912; decided January 21, 1913.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 2, 1912, reversing a judgment of the Appellate Term, which affirmed a judgment of the Municipal Court of the city of New York in favor of plaintiff, and directing a dismissal of the complaint upon the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward W. S. Johnston, Jacob R. Schiff* and *Isidore D. Morrison* for appellant. The provisions of sections 312 and 314 of the Banking Law have no application to the record now before this court. (*Fisher* v. *M. L. Ins. Co.*, 167 N. Y. 182; *Parmele Co.* v. *Haas*, 171 N. Y. 579; *Cheseboro* v. *Tilden*, 21 Wkly. Dig. 467; *Washburn* v. *Rider*, 2 City Ct. Rep. 127; *Thurston* v. *Cornell*, 38 N. Y. 281; *Meinhardt* v. *Excelsior Brewing Co.*, 82 App. Div. 628; *Booker* v. *Heffner*, 95 App. Div. 85; *Standard Fashion Co.* v. *Weinstock*, 111 N. Y. Supp. 513; *Reed* v. *Landau*, 115 N. Y. Supp. 1068; *Adorff* v. *Bechter*, 70 Misc. Rep. 219; *Samelson* v. *Mayer*, 139 App. Div. 6.)

*Hugh B. Lewis* and *Leonard McGee* for respondent. The instrument sued upon falls within the provisions of section 314 of the Banking Law, and was void and the debt discharged. (*Adorff* v. *Bechter*, 70 Misc. Rep. 219; *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.*, 152 N. Y. 251; *Ryan* v. *Provident Washington Ins. Co.*, 79 App. Div. 316; *Drennan* v. *Boyce*, 19 Misc. Rep. 642;

Code Civ. Pro. §§ 1022, 1317; *Benedict* v. *Arnoux,* 154 N. Y. 715; *Duclos* v. *Kelley,* 179 N. Y. 79; *Riker* v. *Gwynne,* 201 N. Y. 143.)

CULLEN, Ch. J. The action was brought in the Municipal Court to foreclose a chattel mortgage for the sum of $65. The defense was that the loan was made in violation of section 314 of the Banking Law (Consolidated Laws, ch. 2), and hence the debt was discharged and the security avoided. The defendant applied to the plaintiff for a loan of $65 and was required to pay therefrom the sum of $10 to the plaintiff's attorneys for their services in examining the defendant's title to the mortgaged property and for drawing the mortgage.

The sole question involved in this appeal is the effect of the exaction of that payment. Undoubtedly under the general usury laws of the state a requirement that the borrower shall pay the cost of having the title of mortgaged property examined and the other expenses attendant on the loan does not render the loan usurious. Such is the universal practice that has obtained from time out of mind. Therefore, if the validity of the loan depended on those statutes, the defense would not be established as a matter of law. It is true that payment might be exacted from the borrower under the guise of defraying the expenses of a loan which in reality was a mere cover for usury. In such case the form of the transaction would not save it from illegality, but whether the exaction was in this case a cover for usury or not was a question of fact. Hence, if the Appellate Division had reversed the judgment on that ground, it could not have dismissed the complaint, but should have ordered a new trial.

Therefore, we are brought to the precise question whether under section 314 of the Banking Law, the exaction of the sum of $10 for legal expenses, whether as a cover for excessive interest or not, discharges the debt and avoids the security. I think it does, and to ascer-

tain the correct construction of section 314, it is necessary to refer to the preceding section 312.

It is first to be remembered that the application of these sections is restricted to a class of loans limited in amount and character — loans less than $200 where security is taken upon household furniture, apparatus or appliances, sewing machines, plate or silverware in actual use, tools or implements of trade, wearing apparel or jewelry. If loans of this character were to be subjected only to the same restrictions as are applicable to loans of money generally under the usury laws, the enactment of section 314 was wholly unnecessary, and it is without any effect whatever. The rate of interest prescribed by this section is the general rate of interest allowed by law. Where loans are made in excess of that rate under the general law (with a few specified exceptions, such as loans to corporations; call loans for the sum of $5,000 on collateral security) the debt is discharged and the security avoided. There was no possible reason for enacting section 314, unless it was intended to prescribe special regulations for the loans mentioned in the section different from those prescribed by law for loans generally. What the intention of the legislature was seems to be reasonably clear when we examine section 312. That section authorizes corporations organized under article X of the Banking Law to charge and receive on mortgage loans made by them interest at 2% a month, and also for the examination of the property and all expenses attendant the loan a sum not exceeding $2 if the loan exceeds $50, and but $1 if the loan is for $50 or less, and this charge for expenses is limited to the original loan. Section 314 forbids any person or corporation other than those organized pursuant to the article to directly or indirectly *" charge or receive any interest, discount or consideration greater than the legal rate of interest "* for the class of loans specified. It then proceeds: "The foregoing prohibition shall apply to any person who, as security for

any such loan, use or forbearance of money, or for any such loan, use or sale of personal credit as aforesaid, * * * or who, by any device or pretense of charging for his services or otherwise, seeks to obtain a larger compensation in any case hereinbefore provided for."

The exaction of the $10 for expenses was a charge for services whether regarded as for the services of the lender or for those of its attorneys, and to fall within the inhibition of the act it is not necessary that it should be exacted as interest or as a cover for interest. It is sufficient that it is exacted as compensation. The theory on which the borrower is required to pay the cost of the examination of the title is not that he employs the conveyancer, but that the lender is entitled to charge the borrower for the expenses to which the lender may be put in making the loan. This principle applies to all expenditures made in good faith. (*Harger* v. *McCullough,* 2 Den. 119; *Eaton* v. *Alger,* 2 Keyes, 41; *Thurston* v. *Cornell,* 38 N. Y. 281.) I think that the case fell directly within the terms of the statute, not necessarily as a device for excessive interest, but as a charge which, under the statute, the lender is forbidden to exact either in its own favor or in favor of any one else.

The exactions imposed on the poorer people in great cities as a consideration for loans which their poverty often requires them to obtain has been the subject of much discussion among economists and philanthropists. The evil was plain; the remedy was not quite so certain. The statutory regulations on that subject which are now before us were enacted with the intent of alleviating that evil. It was sought to induce the investment of capital in the special corporations authorized by the statute by giving them authority to charge a greater than the ordinary rate of interest, but it also carefully provided that the borrower should be charged nothing beyond the authorized rate of interest, except $1 if the loan was $50 or less, and $2 if greater, and then only for the

original loan. It is apparent that the statutory prohibition would be of little value if, while the corporation was forbidden to charge more than the specified sums, it was permitted to require the borrower to employ attorneys or conveyancers to examine the title whose charges were subject to no regulation. The statute meant that in no case should the borrower be compelled to pay on any pretext whatever more than the 2% interest per month and the one or two dollars for expenses. The object of the enactment of section 314 was to prohibit any person or corporation, other than those specially organized under the provisions of the Banking Act, from charging the borrower any other sum than 6% interest. As it would be unreasonable to construe section 312 as tolerating the exaction from the borrower of the payment to any other person by way of compensation for expenses of a greater sum than the prescribed fee, so it would be equally unreasonable to construe section 314 as tolerating a charge for the services of any one, whether the lender or a third person. It was intended to give the corporations organized under the act special privileges and so far as practicable, by means of those privileges, attract the business to such corporations. The corporations are subject to the examination and supervision of the banking department. The profits are limited to ten per cent on the capital employed, and if they exceed such amount, the superintendent of banks must direct them to reduce the rate of interest. The object of the statute was to safeguard the interests of the poorer classes who by the stress of necessity might be compelled to submit to any terms that might be exacted. The field of this character of business is open to all those who choose to engage in it. Any persons may incorporate who desire the benefits of the statute, and then they become subject to its restrictions. But the statute would fall far short of the beneficent results it was sought to effectuate if, after limiting these special corporations to specific charges, other lenders

**270** People ex rel. Interborough R. T. Co. *v.* Sohmer.

[207 N. Y.]                    Statement of case.                    [Jan.,

were allowed to exact such charges in favor of third persons as they might see fit.

We agree in the view of the Appellate Division that on the conceded facts of the case, which it would not be possible to alter on a new trial, the loan violated the statute and the mortgage was void.

The order should be affirmed and judgment absolute ordered against appellant on the stipulation, with costs in all courts.

Hiscock, J. (dissenting). I dissent on the ground that the court on the facts in this case is not entitled to say that the case should be withdrawn from the jury and it be held as a matter of law that the charge of ten dollars complained of was a "device or pretense of charging for * * * services," whereby plaintiff sought "to obtain a larger compensation" for the loan of his money than is provided by the statute.

Gray, Werner and Willard Bartlett, JJ., concur with Cullen, Ch. J.; Chase and Collin, JJ., concur with Hiscock, J.

Order affirmed, etc.