AMY MARTORANO and SALVATORE MARTORANO, Plaintiffs, *v.* CAPITAL FINANCE CORP., Defendant.

First Department, December 19, 1941.

*Irwin Slater*, for the plaintiffs.

*Melvin Howard Osterman*, for the defendant.

*Jackson R. Collins* and *Richard O. Wiesner*, as *amici curiæ*.

TOWNLEY, J. The facts are stated in the opinion of Mr. Justice O'MALLEY. Section 352 of the Banking Law reads in part as follows: " In addition to the maximum rate or amount of interest, consideration, or charges above specified, no further or other charge or amount whatsoever for any examination, service, brokerage, commission, expense, fee, or bonus or other thing or otherwise shall be directly or indirectly charged, contracted for, or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing, recording, or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. If any interest, consideration or charges in excess of those permitted by this act are charged, contracted for, or received the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever."

When a lender requires that the collateral shall be insured and that the insurance must be paid out of the money being advanced for the loan, the lender is exacting an " expense," the benefit of which runs exclusively to the lender and, therefore, he receives an advantage beyond what the statute contemplates.

The statute gives the lender the advantage of an interest rate many times in excess of the normal legal rate. In this case plaintiff Salvatore Martorano was obligated to pay over a period of twenty months $397.60 for a loan of $300. He was also required to give an assignment of his wages, a chattel mortgage covering his household furniture and his automobile. It seems plain that the intention of the statute was that the interest fixed therein should completely compensate the lender for all charges and expenses of every character attached to the loan with the exception of those specifically set forth in the statute. To hold otherwise would open the door to the imposition of charges and alleged expenses which would add to the burden of the borrower and confer upon the lender compensation in excess of that contemplated by the statute.

Judgment should be directed for the plaintiffs.

MARTIN, P. J., and DORE, J., concur; O'MALLEY and COHN, JJ., dissent.

O'MALLEY, J. (dissenting.) The question presented is whether a fee paid by a borrower for insurance on a chattel taken as a partial security for a loan of $300 or less is to be considered a " further or other charge or amount whatsoever for any examination, service, brokerage, commission, *expense*, fee, or bonus or other thing or otherwise * * * " (italics ours), under section 352 of the Banking Law.

Plaintiffs borrowed from defendant, a licensed finance company under the Banking Law, the sum of $300, giving a note in that amount. As security, there was given a chattel mortgage upon an automobile and certain household furniture.

The sum of $300 was advanced in the following manner: $220.54 was for cancellation of an unpaid principal balance of a prior loan; $73.46 was given in cash to the plaintiffs; the balance of $6 was made up by a check given by defendant to plaintiff Salvatore Martorano and by him indorsed to a broker for the Dearborn National Insurance Company which had issued a master policy to defendant. The insurance so procured was for a period of one year and covered fire and theft loss on the automobile, payable to plaintiffs or defendant as their interest might appear. It did not in any way cover the household furniture.

Concededly, defendant received no part of this premium directly or indirectly.

The issue to be determined is whether the exacting of this premium for the insurance in question was prohibited by the Banking Law section, *supra*. It is conceded by the parties that defendant could have refused to make the loan upon the security of the car and

household furnishings unless plaintiffs first and directly procured the insurance. From a practical standpoint, that is what was done here. Instead of using separate funds to procure the insurance, plaintiffs used part of the loan.

It has been held in various jurisdictions under small loan statutes similar to that contained in our Banking Law that, where no part of the insurance premium goes to the lender directly or indirectly, the expense of the insurance is not considered as part of the consideration for the loan. The insurance compulsorily taken out is but additional security, the taking of which is in no wise prohibited.

By the General Laws of Massachusetts (chap. 140), it was provided in section 96 that " interest and expenses " should include all sums for making or securing, directly or indirectly, the loan.

By section 100 of that statute it was provided: " the total amount to be paid on any loan for interest and expenses shall not in the aggregate exceed an amount equivalent to three per cent a month on the amount actually received by the borrower, computed on unpaid balances."

A New Hampshire court called upon to construe that statute stated that it found no Massachusetts decision holding that the expense of insuring the property securing the loan was incurred as an incident or part of the loan. The court held that it was merely the cost of new security. (*Auto Owners' Finance Co., Inc.,* v. *Coleman,* 89 N. H. 356; 199 A. 365.) It is to be noted that the Massachusetts statute provided that the total amount to be paid on any loan " for interest and *expenses* " should not exceed a certain sum. As already appears, the word " expense " is found in section 352, *supra.*

A Michigan small loan statute provided that in addition to the interest provided for therein there should be no further or other charge or amount whatsoever for any examination, service, brokerage, commission or other thing or otherwise directly or indirectly charged. This statute provided that if interest or charges in excess of those permitted shall be " charged, contracted for or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

It was held that a requirement by the lender that the property given as security for the loan be insured, the premium being paid our of the proceeds of the loan, was not a violation of the statute. (*Platz* v. *Lapinski,* 263 Mich. 240; 248 N. W. 607.) It was there stated (pp. 242, 243): " The Auto Loan & Discount Company was certainly justified in insisting that defendant's automobile be protected by insurance before accepting a mortgage on it as security for the loan. Defendant apparently had not the money to secure

such insurance, and desired that a part of that loan to him should be used for that purpose. The company made its check for the $19 payable to him and the insurance company. The use to which it was put cannot be said to have been a cover for excessive interest or a violation of the statute."

A California statute provided with respect to small loans that " no further or other charges either for recording, *insuring* or examining the security or property, * * * shall be asked, charged, or in any way received, where the same would thereby make a greater charge for the money or thing advanced * * *" (italics ours) than permitted by law.

It has been decided in that jurisdiction that, in the absence of a showing of bad faith, a requirement that the security be protected by insurance did not violate the act. It was stated (*Niles* v. *Kavanagh*, 179 Cal. 98, 101; 175 P. 462, 463): " Where a payment does not go to the lender, and is in no sense a compensation to him for the use of his money, the requirement that it be made does not violate the law. It is a very usual and an entirely legitimate practice for one lending money upon mortgage of real or personal property to require that the borrower insure the security against loss. By so insuring, the borrower is protecting his own property. He is not paying any additional compensation for the use of the money."

So, too, in Pennsylvania the court held (*Stein* v. *General Discount Company*, 22 Pa. Dist. & County Rep. 666) that where insurance on the security was exacted in good faith, the loan was not violative of the statute, which provided: " No fees, fines, or other charges, either in addition to or as part of the above specified interest, shall be charged or collected under any pretext whatsoever."

The cases in this jurisdiction relied upon by the plaintiffs, such as *Equity Service Corporation* v. *Agull* (250 App. Div. 96); *Cucco* v. *Pacific Finance Corporation* (259 id. 1033), and *Stuback* v. *Sussman* (8 N. Y. Supp. [2d] 141; affd., 256 App. Div. 903; 281 N. Y. 719) are clearly distinguishable. These and similar decisions involve either alleged extra compensation for services attached to the making of the loan or so-called hazard agreements.

In the present submission, no bad faith on the part of defendant is shown. It received no part of the insurance premium and plaintiffs' coverage was in a duly authorized insurance carrier.

Under the circumstances, there was no violation of section **352** of the Banking Law. Judgment, therefore, should be directed for the defendant as stipulated in the submission but without costs.

COHN, J., concurs.

Judgment directed for the plaintiffs, without costs. Settle order on notice.