AMY MARTORANO et al., Respondents, *v.* CAPITAL FINANCE CORPORATION, Appellant.

Argued April 23, 1942; decided July 29, 1942.

*William F. Bleakley, Jackson R. Collins, Richard O. Wiesner, James D. Hopkins* and *Melvin Howard Osterman* for appellant. The requirement by appellant that the respondents obtain fire and theft insurance covering an automobile offered as security for a loan, followed by the fact that respondents paid the premium therefor out of the proceeds of the loan, is not a violation of the provisions of section 352 of the Banking Law (Cons. Laws, ch. 2.) (*National Bank* v. *Lewis*, 75 N. Y. 516; *Hennessey* v. *Personal Finance Co.*, 176 Misc. Rep. 201; *Domestic Finance Corp.* v. *Williams*, 174 Misc. Rep. 227; *Behan* v. *People*, 17 N. Y. 516; *Howell* v. *Mills*, 53 N. Y. 322; *People ex rel. Lyon Co.* v. *McDonough*, 76 App. Div. 257; 173 N. Y. 181; *Stradar* v. *Stern Bros.*, 184 App. Div. 700; *People* v. *Lamphere*, 219 App. Div. 422; *Daly* v. *Haight*, 170 App. Div. 469; *Cashmore* v. *Peerless Motor Car Co.*, 154 App. Div. 814; *Platz* v. *Lapinski*, 263 Mich. 240; *Niles* v. *Kavanagh*, 179 Cal. 98; *Stein* v. *General Discount Co.*, 22 Pa. Dist. & County Rep. 666; *Auto Owner's Finance Co.* v. *Coleman*, 89 N. H. 356.)

*Irwin Slater* and *Harry Wolfson* for respondents. The contract of loan between respondents and appellant was void because of the charge for insurance. (*London Realty Co.* v. *Riordan*, 207 N. Y. 264.) The insurance is, in part, exclusively for the benefit of appellant, and thus unlawful, on such ground alone. (*Personal Finance Co.* v. *Lyons*, 128 Conn. 254; *Olcott* v. *Tioga R. R.*, 40 Barb. 179; *Harrison* v. *Hall*, 239 N. Y. 51.) Even if appellant does not profit from the premium, the payment for the premium represents an additional charge forbidden by the statute. (Cons. Laws, ch. 28; § 352.)

LEHMAN, Ch. J. On December 28, 1940, the plaintiff borrowed from the defendant the sum of $300, giving to the defendant a promissory note for that amount with interest from date " payable monthly, at the rate of 3% per month on any part of the unpaid principal balance of this loan not in excess of $150.00 and 2½% per month on any remainder of the unpaid principal balance of this loan until said loan with interest as aforesaid is fully paid." As security for the loan the plaintiffs executed a wage assignment and chattel mortgage upon their household goods and upon an Oldsmobile motor car.

" In order to obtain said loan, Salvatore Martorano, the plaintiff, was required at the time of the making of said loan and before its completion, to apply for insurance " on the automobile and " said insurance was obtained and the premium paid out of the proceeds of said loan " by means of a check dated December 28, 1940, in the amount of six dollars, which was payable to Salvatore Martorano and delivered to the plaintiff as part of such proceeds at the time the loan was consummated. The plaintiffs claim that by reason of these conceded facts the contract of loan violates section 352 of article IX of the Banking Law, chapter 524 of the Laws of 1941 as thereafter amended. The controversy was submitted to the Appellate Division upon a statement of agreed facts. By a divided court the Appellate Division directed judgment in favor of the plaintiffs.

Section 352 of the Banking Law (Cons. Laws, ch. 2), provides in part: " In addition to the maximum rate or amount of interest, consideration, or charges above specified, no further or other charge or amount whatsoever for any examination, service, brokerage, commission, expense, fee, or bonus or other thing or otherwise shall be directly or indirectly charged, contracted for, or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing, recording, or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. If any interest, consideration or charges in excess of those permitted by this act are charged, contracted for, or received the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever."

Without insurance a chattel mortgage upon an automobile provides, it is plain, less security for the repayment of a loan than a chattel mortgage upon an automobile which is insured. Certainly mortgagees of real or personal property not infrequently recognize that; and as a condition of granting a loan they stipulate that an insurance policy upon the mortgaged property payable to the mortgagee as interest may appear, must be obtained. The cost of the insurance which the mortgagor must purchase is an expense which the mortgagor must bear in order to meet the conditions upon which the lender is willing to make the loan. The cost of

repairing the mortgaged property would also be an expense to the mortgagor if the lender refused to make a loan upon property in need of repair, but neither is an "expense" which is "directly or indirectly charged, contracted for or received" by the lender within the meaning of the statute.

As the prevailing opinion of the Appellate Division (263 App. Div. 79, 80) states: "It seems plain that the intention of the statute was that the interest fixed therein should completely compensate the lender for all charges and expenses of every character attached to the loan with the exception of those specifically set forth in the statute. To hold otherwise would open the door to the imposition of charges and alleged expenses which would add to the burden of the borrower and confer upon the lender compensation in excess of that contemplated by the statute." The test, then, is whether the lender has placed upon the borrower the burden of an additional charge in order to give to the lender "compensation in excess of that contemplated by the statute." That is in accord with the test formulated by the court under an earlier statute in *London Realty Co.* v. *Riordan* (207 N. Y. 264, 268).

Here the cost of the insurance gives to the lender the indirect benefit of better security for the repayment of the loan. It can give to the lender no other benefit. Under no circumstances can the lender receive more than the principal amount of the loan and the compensation expressly permitted by the statute. Out of that compensation the lender pays for every service connected with the making of the loan and every other expense to which the lender might be put in connection with the loan, and the lender has not stipulated for reimbursement for such expenses. The statute does not forbid the lender from demanding, as a condition of making the loan, that the borrower shall provide the form of security for repayment of the loan which the lender deems adequate, even though the borrower may be put to some expense in order to furnish the stipulated security. The lender may, of course, not impose such condition as a cover for obtaining greater compensation than the law permits, and here there is no claim that the lender could or did obtain additional compensation in any form. That the borrowers for their own convenience chose to pay the cost of insurance out of the proceeds of the loan, of course, does not render illegal what would otherwise be legal.

In other jurisdictions the courts have construed analogous statutes in manner which sanctions the practice which has been condemned in the courts below. (*Auto Owners Finance Co.* v. *Coleman*, 89 N. Y. 356; *Platz* v. *Lapinski*, 263 Mich. 240; *Niles* v. *Kavanagh*, 179 Cal. 98.) The Department of Banks of this State sanctioned it until 1941 when the Appellate Term of the Supreme Court of the first department decided otherwise in the case of *Krulik* v. *Confidential Personal Loan Co.* (176 Misc. Rep. 138). Such administrative rulings upon which lenders rely are entitled to weight. We find no violation of the statute by the lender in this case.

The judgment of the Appellate Division should be reversed and judgment directed in favor of the defendant, without costs.

LEWIS, J. (dissenting). I cannot agree with the decision about to be made which involves an interpretation of the following portion of section 352 of the Banking Law:

" § 352. * * * In addition to the maximum rate or amount of interest, consideration, or charges above specified, *no further or other charge or amount whatsoever* for any examination, service, brokerage, commission, *expense,* fee, or bonus *or other thing or otherwise shall be directly or indirectly* charged, contracted for, or *received,* except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing, recording, or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. *If any* interest, consideration or charges *in excess of those permitted by this act* are charged, contracted for, or *received the contract of loan shall be void* and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever." (Emphasis supplied.)

The quoted portion of the statute gives us evidence of a studied effort by the Legislature to enact a law which will accomplish the elimination of the " loan shark " evil. To that end there were inserted in section 352 prohibitions which are broad in scope — broad enough, as I believe, to prohibit a licensed lender under article IX of the Banking Law from *requiring,* as a prerequisite to a loan, that the borrower shall furnish prepaid fire and theft insurance covering the mortgaged chattel. It may well be that

as a matter of practical dealing between business men, such a requirement is a matter of common practice and certainly is good judgment. But we are concerned here with limitations upon those rights given to a licensed lender by a statute designed to protect the borrowers of small sums against excessive charges in connection with that method of financing — charges which have been the subject of grave abuse. If the Legislature had intended to permit the practice which is to be approved by a majority of the court, it would have enacted a law which would specifically permit such a practice, as has been done in the States of California, Florida, Colorado and Oregon.

In *London Realty Co.* v. *Riordan* (207 N. Y. 264), this court was called upon to determine whether the exaction from a borrower of a payment of ten dollars to a licensed lender's attorney, for services in examining the title to mortgaged property, had the effect of making the loan void. That decision was in 1913 when the statutory prohibitions were not as broad in scope as they are to-day. In the course of the opinion Chief Judge CULLEN stated for the court: (p. 268) " I think that the case fell directly within the terms of the statute, not necessarily as a device for excessive interest, *but as a charge which, under the statute, the lender is forbidden to exact either in its own favor or in favor of any one else.*" At that time the court made clear its intention not to extend the charges which a licensed lender might require of the borrower as a condition of the loan.

In the present case I attach importance to that paragraph of the agreed statement of facts which states — " That *in order to obtain said loan* * * * the plaintiff was *required* at the time of the making said loan and *before its completion,* to apply for insurance. * * * " (Emphasis mine.) The appellant-lender asserts that the requirement which is made, that insurance upon the mortgaged chattel be furnished by the borrowers, was merely preliminary to the loan. We are told that there was no contractual relationship with respect to insurance between the borrowers and lender. I do not so interpret the agreed facts. The requirement by the lender that the borrowers should furnish fire and theft insurance upon the chattel with premium prepaid — which insurance we may assume would have to be kept in force until the loan is paid — cannot be said to be merely a preliminary requirement but is a part of the contract

of loan. The agreed facts inform us that " * * * the plaintiff was *required* at the time of the making of said loan and before its completion, to apply for insurance on said 1936 Oldsmobile and that said insurance was obtained and the premium paid out of the proceeds of said loan * * *." Furthermore, I think it significant that the fire and theft insurance coverage which the borrowers furnished was a participation in a master policy issued by an insurance company to the lender with loss, if any, payable to the lender and borrowers as their interests may appear.

I am not left in doubt that by such an arrangement — " *required* " of the borrowers as a prerequisite to the loan — the lender receives a benefit at the expense of the borrowers who must pay a premium for a stated term before the " completion " of the loan. That benefit is something of value received by the lender in connection with the loan. Indeed, it is the view of a majority of the court, as expressed by the opinion herein, that " Here, the cost of the insurance gives to the lender the indirect benefit of better security for the repayment of the loan." I believe that such benefit, concededly received by the lender, is — within the language of section 352 —" in addition to the maximum rate or amount of interest, consideration, or charges " which the statute permits. (Cf. *Stuback* v. *Sussman*, 8 N. Y. Supp. [2nd] 141; affd., 256 App. Div. 903; affd., 281 N. Y. 719.)

While the rule of practical construction of a statute by an administrative officer may be influential in interpreting a law, I do not think it may be applied in the present case. The Banking Department of this State was not consistent in its attitude toward the problem which this case presents. It promulgated in 1934 a regulation (art. V, par. " h " of regulations of June 21, 1934) which from 1934 to 1938 forbade the charging of a fee from the borrower " for insurance or examining the security or property or for the drawing of papers, or for any services or upon any pretext whatsoever except court and statutory costs actually provided for by law." As to that regulation the appellant makes the doubtful comment that it did not " prohibit the *requirement* of insurance. It merely prohibits a lender from charging any fee for its services as broker or as agent for the borrower in connection with the requirement of insurance." That regulation was deleted from the Department's regulations published on December 31, 1938, and there was nothing

promulgated upon the subject until March 15, 1941 — after the decision in *Krulik* v. *Confidential Personal Loan Co.* ([Appellate Term] 176 Misc. Rep. 138). At that time a special bulletin was sent to all licensed lenders which called attention to the then recent ruling in the *Krulik* case (*supra*) and advised them to regard the decision as controlling. In the *Krulik* case the Appellate Term had ruled that an item of expense for the insurance of the mortgaged chattel was not permitted by section 352 of the Banking Law and that accordingly the debt there involved was discharged and the security avoided. This brief history of the Banking Department's attitude toward the question whether an item of expense for insurance may be *required* of a borrower by the lender does not impress me as strong evidence of practical construction favorable to the appellant.

I believe the rule of *London Realty Co.* v. *Riordan* (*supra*) is decisive in the case at bar. There, as we have seen, the lender required the borrower to pay for the services of attorneys to examine the title of the mortgaged property; and there the lender received no part of the attorneys' fees. So, in the case before us, the lender required the borrower to pay for fire and theft insurance upon the mortgaged chattel and received no part of the premium. In the *Riordan* case the benefit to the lender was assurance of good title; in the present case the benefit to the lender is assurance against loss of the chattel by fire or theft.

My conclusion is that the expense item of six dollars which was " *required* " of the borrowers by the lender " at the time of making of said loan and before its completion " is, in the circumstances disclosed by the agreed facts, a substantial item. I do not regard it in this instance as a device to cover an excessive interest charge. However, as a benefit to the lender incidental to the loan, I believe the requirement of prepaid insurance upon the mortgaged chattel bears such a reasonable relation to the amount charged by the lender for the loan as to violate the prohibitions contained in section 352 of the Banking Law.

Accordingly, I dissent and vote for affirmance.

LOUGHRAN, FINCH and RIPPEY, JJ., concur with LEHMAN, Ch. J.; LEWIS, J., dissents in opinion in which CONWAY and DESMOND, JJ., concur.

Judgment accordingly.