FRANK J. MAELLARO, PLAINTIFF-APPELLANT, v. MADI-SON FINANCE COMPANY OF JERSEY CITY, DEFEND-ANT-RESPONDENT.

Argued October 7, 1942—Decided April 22, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Henry Pass* (*William Boorstein*, of counsel).

For the respondent, *Lindabury, Depue & Faulks* (*Burtis S. Horner*, of counsel).

The opinion of the court was delivered by

HEHER, J. The determinative question is whether respondent, a small loan company licensed under *R. S.* 17:10-1, *et*

*seq.,* was guilty of a violation of *section* 17:10-14 of the statute in these circumstances:

Appellant desired to purchase an automobile upon which there was a lien in the sum of $238. He applied to respondent for a loan in this sum to satisfy the lien. The application was granted with the understanding that appellant would give a mortgage upon the vehicle as security for the loan. The chattel was appraised at $255. Respondent also asked for a policy of insurance against loss or damage from fire, lightning, theft, robbery, and collision or upset, and appellant agreed to provide it at his own expense. The loan was so conditioned. Respondent's manager testified that appellant tendered the policy then covering the automobile, but he "told him it could not be transferred." He proceeded to state why the transfer could not be made, but the inquiry was foreclosed by an objection "to the reason" interposed by appellant's counsel, which was sustained. Appellant thereupon made written application for this insurance coverage to the Colonial Insurance Company, and a policy was issued. While the insurer was suggested by respondent, appellant was told he was at liberty to procure the insurance from "any other company that he might have in mind." The premium was $17. A loan was eventually made in the sum of $255, to cover also the cost of the insurance; and appellant endorsed respondent's check to him for $17 and returned it to respondent, who delivered it to the insurer in payment of the premium. The balance of the loan, $238, was used to liquidate the lien upon the automobile. While the policy was issued under a "master policy" granted by this insurer to respondent, "covering all policies issued between the borrower" and respondent (as to the nature and function of a master policy see *R. S.* 17:28-4 and 17:28-5), it is conceded that the premium charged appellant was in accordance with the standard, uniform rate, and that respondent did not share therein to any extent. This much was stipulated at the trial. Appellant's sole contention is that respondent "received the benefit of the protection of its lien interest at the expense of the borrower, which expense should have been borne by it as an item included in the all-inclusive charge of 2½% per month permitted by the statute,"

and so the insurance premium constituted an exaction by the lender in contravention of *section* 17:10-14, *supra*. It is said that not only was this in itself a "charge" in violation of that section, but that the interest exacted was greater than the rate permitted by the statute, since it was calculated upon $255, rather than upon $238; and that therefore the borrower has a right of action under the last-cited provision for the recovery of all moneys returned to the lender on account of the loan.

The District Court Judge awarded judgment to the lender; and the borrower maintains that it rests upon a misapprehension of the statutory concept and so should be reversed. The point is not well-taken.

Unlike the exaction in the case of *Edelstein* v. *Hub Loan Co.*, 129 *N. J. L.* 497, the insurance premium thus paid by the borrower is not an expense incident to the conduct of the lender's business, and is therefore not within the interdicted class. The insurance in question was essential to the maintenance of the integrity of the mortgage security. True, this served the interests of the lender, but not more so than the taking of other measures necessary to render the chattel an adequate and satisfactory security—*e. g.*, the provision of a missing essential part, the making of repairs, or the liquidation of a lienable claim for repairs already made. Such are plainly not within the enumerated proscribed items. The statute directs that no "charge or amount for any examination, service, brokerage, commission, expense fee, or bonus or other thing or otherwise shall be directly or indirectly charged, contracted for, or received," in addition to the permissible exaction for interest, "except on actual sale of the security in foreclosure proceedings or upon the entry of judgment;" and it is provided, by way of sanction, that the contract of loan shall be void, and the full amount of the loan forfeited by the lender, "if any interest, consideration or charges in excess of those permitted by this chapter are charged, contracted for, or received · * * · *.*" *Section* 17:10-14, *supra*. Such insurance has long been generally considered essential to the protection and preservation of the value of tangible property given as a security, whether it be

real or personal; and it is not to be presumed that the legislature designed to regard the cost thereof as an item to be absorbed by the gross interest income of the lender. The statute is not to be so read unless the language admits of no reasonable doubt of that purpose. In the ultimate analysis, this insurance was for the benefit of the borrower. Such provision against mishap is commonly deemed to be of the essence of prudent management.

The sole "benefit" to the lender is the safeguarding of the security. It is utterly unreasonable to presume that the legislature meant to authorize the taking of chattel security and yet place upon the lender the cost of indemnification against the loss of the subject-matter. This is a responsibility incident to ownership. Such insurance is deemed an integral part of the security itself. The exception from the outlawed category of charges and disbursements attending the "actual sale of the security in foreclosure proceedings" and the "entry of judgment" is significant of the legislative sense of the associated terms. Certainly, the assignment of a pre-existing policy, without reimbursement of the unearned premium, would not fall into the forbidden class. And, as regards the cancellation value, that would be just as much a payment of the insurance premium by the borrower as the payment in the case at bar.

As said in *Edelstein* v. *Hub Loan Co., supra,* the legislation embodied in *section* 17:10-1, *et seq.,* is *sui generis;* and its several provisions are to be considered and interpreted in the light of the essential object to be served. It regulates the small loan business in the public interest. The object was the eradication of the abuses and evil practices that had attended the conduct of this business, primarily the unconscionable and oppressive interest exactions. In construing a provision substantially similar, the New York Court of Appeals found the criterion to be "whether the lender has placed upon the borrower the burden of an additional charge in order to give the lender 'compensation in excess of that contemplated by the statute.'" *Martorano* v. *Capital Finance Corp.,* 289 *N. Y.* 21; 43 *N. E. Rep.* (2d) 705. The New York statute lays upon the borrower the burden of defraying "the

lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing, recording, or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter." Ours does not. It apparently treats such as a disbursement in the transaction of the lender's business not chargeable to the borrower. It enjoins the lender from exacting "any expense fee, or bonus or other thing or otherwise." But this obviously does not warrant a construction of our statute that would render the lender liable for the insurance premium under the circumstances here presented. The filing or recording fee is an expense incurred by the lender after the delivery of the mortgage and therefore an "expense fee" referable to the conduct of the lender's business and so not transferable to the borrower. The rule of interpretation laid down in the majority opinion in the last-cited case is that generally accepted by the courts which have considered like provisions. *Niles* v. *Kavanagh,* 179 *Cal.* 98; 175 *Pac. Rep.* 462; *Platz* v. *Lapinski,* 263 *Mich.* 240; 248 *N. W. Rep.* 607; *Auto Owners' Finance Co.* v. *Coleman,* 89 *N. H.* 356; 199 *Atl. Rep.* 365; *Friedman* v. *Wisconsin Acceptance Corp.,* 192 *Wis.* 58; 210 *N. W. Rep.* 831. We refer to these cases only as illustrations of the general principle. It does not necessarily follow that we approve all these holdings in their entirety. There are differences in the statutes that must not be overlooked.

While the Small Loan Act is generally remedial in nature, the provisions enjoining the imposition of charges and expenses not specifically authorized are highly penal, and are therefore to be strictly construed. Not only does a violation entail the forfeiture of the moneys loaned, whether repaid or not, but the lender is also guilty of a misdemeanor. *Section* 17:10-21. A statute may be both penal and remedial; and its several provisions are to be treated in this regard according to their nature. *Edelstein* v. *Hub Loan Co., supra.*

The judgment is accordingly affirmed, with costs.

Mr. Justice Perskie dissents for the reasons stated by Judge Lewis, for the minority, in *Martorano* v. *Capital Finance Corp., supra.*