(No. 34275.—

GLENN H. SUNDERLAND, doing business as Ambraw Finance Company, Appellant, *vs.* J. EDWARD DAY, Director of Insurance, Appellee.

*Opinion filed September 20, 1957.*

CHAPMAN AND CUTLER, of Chicago, and GILLESPIE, BURKE & GILLESPIE, of Springfield, (ROSCOE C. NASH, HUGH J. DOBBS, FRANK W. YOUNG, and WILLIAM J. HURLEY, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (MARK O. ROBERTS, and LEE D. MARTIN, of counsel,) for appellee.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, JACKSON R. COLLINS, of New York, New York, and EDWARD A. DUNBAR, of Morristown, New Jersey, (MONTGOMERY S. WINNING, and EDWARD A. DUNBAR, of coun-

sel,) for *amicus curiae,* Beneficial Management Corporation.

JOHN W. FREELS, ROGER S. BARRETT, WAYNE R. COOK, HUBACHEK & KELLY, all of Chicago, and CHARLES G. BRIGGLE, JR., of Springfield, (CHARLES C. ULRICH, of counsel,) *amici curiae,* in support of the decision of the Appellate Court.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

As originally filed, the complaint in this case raised numerous constitutional and other questions going to the validity and the construction of the Small Loans Act and one of the regulations of the Department of Insurance under that act. In the progress of the case through the trial and Appellate courts many of the contentions once advanced have been abandoned. As the case now stands in this court, the single question is whether or not a licensee under the Small Loans Act can require a borrower to purchase credit life insurance as a condition precedent to the making of a loan.

The answer to this question depends primarily on the construction of the following sentence in section 13 of the Small Loans Act: "In addition to the interest herein provided for no further or other charge or amount whatsoever for any examination, service, brokerage, commission, expense, fee, insurance premium, or bonus or other thing, or otherwise, shall be directly or indirectly charged, contracted for, or received, except when a chattel mortgage is recorded, the actual recorder's fee for same may be paid by the borrower." Ill. Rev. Stat. 1955, chap. 74, par. 31.

Under the rule-making authority of section 21 of the act (Ill. Rev. Stat. 1955, chap. 74, par. 39) the Department has promulgated Rule 15(c) which states that "No borrower shall be required to purchase life insurance as a condition precedent to a loan * * *." The circuit court held this portion of the regulation invalid. The Appellate

Court reversed, holding that the statute itself prohibits a licensee from requiring that the borrower buy credit life insurance as a condition to the making of a loan, and that the regulation is therefore valid. (11 Ill. App.2d 248.) We allowed leave to appeal.

To reverse the judgment of the Appellate Court, the plaintiff urges that the critical sentence of section 13 refers only to the money that a licensee may receive in connection with a loan, and does not "limit the manner in which the borrower may spend the proceeds of the loan or the charges that may be made by third parties against the borrower." He summarizes the meaning of section 13, including the sentence in question, as follows: "Every licensee may lend money and may charge the borrower, contract for with the borrower and receive thereon from the borrower interest at a rate not exceeding three per centum (3%) per month, but in addition to this interest no insurance premium or any other amount whatsoever shall be directly or indirectly charged the borrower by the licensee, contracted for with the borrower by the licensee or received from the borrower by the licensee."

Under this interpretation of the statute, a small loan licensee may charge the maximum rate of interest that the statute allows. He may also, as a condition precedent to making a loan, require the borrower to pay any amount whatsoever as a fee for examination, inspection or appraisal, any amount as commission or brokerage, and any attorney's fee or other expense, so long as the licensee does not himself receive the added fee or other charge. In our opinion the Appellate Court properly rejected this interpretation.

The sentence in question speaks from the point of view of the borrower rather than the lender. It prohibits the imposition of a "charge," which means a pecuniary burden or expense. (Webster's New International Dictionary, 2d ed.; cf. *Federal Land Bank* v. *Warner,* 42 Ariz. 201, 23

P.2d 563; *Merchants Exchange Nat. Bank* v. *Commercial Warehouse Co.* 49 N.Y. 635, 639.) It is concerned with the imposition of the burden, and not with the profit that may result from its imposition. The exception that it contains shows that its prohibition against added burdens or expenses is intended to apply to payments made to third parties. The fee for recording a chattel mortgage goes to the recorder, obviously a third party, for a service rendered by him. Nevertheless an express exception was necessary to make it permissible to impose this expense upon the borrower.

The plaintiff's restrictive interpretation also disregards the normal meaning of the words used in the controlling sentence of section 13. For example, any charge for "brokerage" is prohibited. In ordinary usage, the term "brokerage" necessarily implies a third party. "A broker is an agent employed to make bargains and contracts between other persons in matters of trade, for a compensation commonly called brokerage, or, in the language of Lord Chief Justice Tindal, 'a broker is one who makes a bargain for another, and receives a commission for so doing.'" *Saladin* v. *Mitchell*, 45 Ill. 78, 83; *Braun* v. *City of Chicago*, 110 Ill. 186; *City of Chicago* v. *Barnett*, 404 Ill. 136; *Eau Claire Canning Co.* v. *Western Brokerage Co.* 213 Ill. 561, 583.

So, too, in ordinary usage, a "commission" means an amount paid to a third person. "The word 'commission' is defined as the recompense or reward of an agent, factor, broker or bailee, when the same is calculated as a percentage on the amount of his transactions or on the profit to the principal. (Black's Law Dictionary, 3d ed. p. 361.)" *Commonwealth Life and Accident Insurance Co.* v. *Board of Review*, 414 Ill. 475, 484.

The deficiencies in plaintiff's interpretation are even more apparent when we come to the prohibition against any charge for an "insurance premium." That restriction can

have no application to a small loan licensee, for under article XXXI of the Insurance Code only a licensed insurance agent, broker or solicitor is permitted to solicit, negotiate for or effect policies of insurance. (Ill. Rev. Stat. 1955, chap. 73, pars. 1065.36-1065.59.) If the statute does not apply to those third parties, the prohibition of any charge for an "insurance premium" is meaningless.

Plaintiff also argues that the structure of section 13, when it is read as a whole, "clearly shows that this sentence was inserted in the Act to specify what a licensee could and what he could not charge in addition to interest in making a loan." He then points out that the section specifies the maximum interest rate that a licensee can charge, and that the two sentences immediately preceding the critical one are in these terms: " 'No *licensee* shall encourage, compel, or permit any borrower * * * to split up * * * any loan * * *.' * * * 'No *licensee* shall encourage, compel, or permit any person * * * to become obligated * * * under more than one contract of loan at the same time, for the purpose or with the result of obtaining a higher rate of interest than would otherwise be permitted by this section.' " We are not persuaded by this argument. So far as the structure of the section is significant, we think that the conscious shift from a series of prohibitions expressly aimed at the licensee rather suggests that the legislature did not cast the following sentence in that form because it did not intend the prohibition to apply only to the licensee.

In support of his interpretation of the statute, plaintiff cites the following decisions from other jurisdictions: *Mills v. Parrott,* 237 S.W.2d 851 (Ky.); *Niles v. Kavanagh,* 179 Cal. 98, 175 Pac. 462; *Martorano v. Capital Finance Corporation,* 289 N.Y. 21, 43 N.E.2d 705; *Maellaro v. Madison Finance Co. of Jersey City,* 130 N.J.L. 140, 31 A.2d 485; *Platz v. Lapinski,* 263 Mich. 240, 248 N.W. 607; *Auto Owners' Finance Co., Inc. v. Coleman,* 89 N.H.

356, 199 Atl. 365.) The Kentucky case involved credit life insurance, but it is otherwise dissimilar. In that case the "taking out of the insurance was not a requirement for making the loan," and the transaction with respect to the insurance took place after negotiations for the loan were completed.

Each of the other cases involved the lender's right to require insurance upon property pledged as security for the loan, and in each of them it was held that such a requirement was not prohibited so long as the premiums were paid to a third party and the small loan licensee did not personally profit thereby. None of the statutes involved in these cases prohibited any charge on account of an "insurance premium," as does section 13. There are other statutory differences. In the California case, decided in 1918, the statute emphasized the return to the lender by its reference to a charge "upon any pretext." Certainly we think that the brokerage fee to a third party that was sanctioned in that case is prohibited under our section 13. The New York case was decided by a sharply divided court, and we are impressed by the dissent, written by Chief Judge Lewis.

We are not concerned in this case with the pledging of a policy of life insurance that the borrower already owns as security for a loan. No charge upon the borrower is there involved. Nor are we concerned with a requirement that insurance be secured on property pledged as security. Neither practice is prohibited by the Department's regulation. There is a difference between a requirement of insurance to protect an asset that the borrower has voluntarily acquired and already owns, and a requirement that the borrower purchase a new and unwanted asset which itself becomes security for the loan. The effect of that difference upon the Department's regulation is not before us.

Beneficial Management Corporation, *amicus curiae,* has drawn our attention to sections 367(7) and 367a(e) of the Insurance Code (Ill. Rev. Stat. 1955, chap. 73, par. 979(7) and 979a(e)) as demanding a different interpreta-

tion of section 13 of the Small Loans Act. Those sections define and regulate group accident and health isurance, and blanket accident and health insurance. In 1953 they were amended to prohibit the collection of any premiums upon such insurance from borrowers under the Small Loans Act. The argument is that by these amendments the General Assembly recognized that a premium received by anyone other than a licensee for insurance required as security under the Small Loans Act is not a prohibited charge under that act. We cannot give the amendments an effect so expansive. In our opinion they show a legislative purpose to make the sanctions of the Insurance Code applicable to those who collect group or blanket accident and health insurance premiums from borrowers under the Small Loans Act. Because the General Assembly did not extend those sanctions to all types of insurance, it does not follow that the specific mention of insurance premiums is to be read out of the Small Loans Act.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*